HILTZ v PHIL'S QUALITY MARKET`

Docket Nos. 67272, 67273. Argued April 5, 1983 (Calendar No. 4).— Decided August 22, 1983.

Kurt Hiltz was awarded 136 weeks of workers' compensation benefits for the loss of the industrial use of the thumb, index finger, and middle finger of his right hand while employed by Phil's Quality Market, partial disability benefits at the end of the specific loss period, and rehabilitation training expenses. The Buckeye Union Insurance Company, the market's workers' compensation carrier, paid 70% of the specific loss benefits pending appeal to the Workers' Compensation Appeal Board. The board reversed the award of specific loss benefits for the plaintiff's loss of the industrial use of his thumb and rehabilitation training expenses, but affirmed the remainder of the award, including partial disability benefits. Buckeye sought to credit the specific loss benefits paid pending appeal for the loss of use of the thumb against the accrued, but unpaid, compensation which the plaintiff was due upon final determination. A hearing referee and the appeal board determined that the benefits paid to which the claimant was not entitled could not be credited against the remaining compensation due, but that Buckeye must seek reimbursement solely from the Second Injury Fund. The Court of Appeals, N. J. Kaufman, P.J., and R. B. Burns and Warren, JJ., reversed in a memorandum opinion (Docket Nos. 48272, 48273). The plaintiff appeals.

In an opinion by Justice Boyle, joined by Chief Justice Williams and Justices Ryan, Brickley, and Cavanagh, the Supreme Court *held:*

An employer or insurance carrier may receive credit for workers' compensation benefits paid pending an appeal of an award against any accrued, but unpaid, compensation finally determined to be due a claimant on the final determination date. Benefits which become due after the final determination date are not subject to such a credit. Where the amount paid by the employer or carrier during the appeal period exceeds

REFERENCE FOR POINTS IN HEADNOTES
[1-3] 82 Am Jur 2d, Workmen's Compensation § 658.

the total amount due the claimant on the final determination date, reimbursement of the excess is to be sought solely from the Second Injury Fund.

1. During the pendency of an appeal of workers' compensation benefits awarded by a hearing referee, an employer or its insurance carrier is required to pay 70% of the weekly benefits from the date of the award until the appeal is resolved. Upon final determination, it is immaterial whether 70% of the weekly benefits were paid for certain weeks for which no benefits were ultimately determined to be due because the 70% of the benefits are paid under the referee's presumptively valid award. The question is not for what period 70% of the benefits awarded were paid, but what amount of compensation was paid to the injured employee pending appeal. The amount actually paid must be compared to the amount due the employee upon final determination to ascertain whether the employer or carrier has paid benefits in excess of the final award or remains liable for additional benefits.

2. Reimbursement of excess benefits paid to an injured employee by an employer or its insurance carrier pending an appeal of an award is the liability of the Second Injury Fund; the employee is never liable for reimbursement. However, reimbursement is not equivalent to setoff or credit of excess monies paid to an employee during the pendency of an appeal against accrued, but unpaid, benefits finally determined to be due the employee because a setoff or credit does not require the employee to return monies already paid or to receive less benefits than those to which he is ultimately entitled.

3. An employer or its insurance carrier must pay all awarded compensation due upon the date of the final determination of an appeal, less any compensation already paid. In this case, the total specific loss benefits awarded to the plaintiff became due prior to the date of final determination. From that amount, the carrier was entitled to subtract compensation already paid, including the 70% of benefits paid for the industrial loss of use of the plaintiff's thumb, even though that portion of the award was ultimately reversed by the board. The entire award of the referee was presumptively valid compensation, and its character was not changed from compensation to a form of "social payment" subsequent to the final determination. The amount paid by the carrier was compensation because it was a percentage of the referee's award of compensation.

4. The plaintiff, upon final determination, was due 100% of the compensation awarded for the loss of industrial use of the

index and middle fingers of his right hand, 70% of which had already been paid by the carrier. But, in addition, the carrier had paid compensation for 70% of the referee's award for the loss of industrial use of the plaintiff's thumb, the portion of the award which was reversed by the board. Because this payment was compensation and had already been paid, the carrier was entitled to credit that payment against the unpaid 30% of the affirmed specific loss benefits which were due. To permit recovery by the carrier only from the Second Injury Fund would enable the plaintiff to receive greater compensation than he was awarded, contrary to the legislative intent of the workers' compensation act.

Affirmed.

Justice Kavanagh, joined by Justice Levin, dissented. He would hold that an insurance carrier may not take credit for overpayment of workers' compensation benefits during the pendency of an appeal of an award against compensation due a worker upon final determination, but must seek reimbursement from the Second Injury Fund.

1. An insurance carrier may be reimbursed for workers' compensation benefits paid during the pendency of an appeal of an award of benefits where the final determination of the benefits due a worker rescinds or reduces the original award. The reimbursement must be sought from the Second Injury Fund and not the worker, even though the result is a windfall to the worker. There is nothing in the statute to support a conclusion of legislative intent to deny a windfall.

2. The statute here does not use the word "credit" at all. The concept of credit comes into play only when the award is affirmed, not when it is reduced or rescinded. Payments of workers' compensation benefits made during the pendency of an appeal may be credited against benefits due a worker upon final determination where the original award is affirmed.

### OPINION OF THE COURT

1. WORKERS' COMPENSATION — BENEFITS DURING APPEAL.

An employer or insurance carrier must pay 70% of workers' compensation benefits awarded to an injured employee by a hearing referee during the pendency of an appeal of the award to the Workers' Compensation Appeal Board from the date of the award until a final determination is made, unless a shorter period is specified in the award (MCL 418.862; MSA 17.237[862]).

2. WORKERS' COMPENSATION — BENEFITS DURING APPEAL — REIM-
BURSEMENT.

An employer or its insurance carrier, upon final determination of
an appeal of a workers' compensation award, must pay all
compensation which has become due, less any compensation
already paid, or, where the compensation paid exceeds the
amount due because of reduction or rescission of the award,
seek reimbursement from the Second Injury Fund (MCL
418.862; MSA 17.237[862]).

3. WORKERS' COMPENSATION — BENEFITS DURING APPEAL — SETOFF —
REIMBURSEMENT.

Workers' compensation benefits paid by an employer or its insur-
ance carrier during the pendency of an appeal of an award may
be set off or credited against accrued, but unpaid, benefits due
upon final determination of the appeal where the original
award is reduced or rescinded and the amount of benefits
actually paid exceeds 70% of the amount due; reimbursement
of benefits paid in excess of the total amount due upon final
determination must be sought solely from the Second Injury
Fund (MCL 418.862; MSA 17.237[862]).

4. WORKERS' COMPENSATION — BENEFITS DURING APPEAL — SETOFF.

The amount of workers' compensation benefits paid by an em-
ployer or its insurance carrier during the pendency of an
appeal of an award is based on the amount of the presump-
tively valid award and not an arbitrary amount applied in all
cases; it is compensation already paid and may be deducted
from the amount of compensation due upon final determination
whether or not a portion of the original award is reduced or
rescinded (MCL 418.862; MSA 17.237[862]).

5. WORKERS' COMPENSATION — BENEFITS DURING APPEAL — SETOFF —
REIMBURSEMENT.

Reimbursement of workers' compensation benefits paid in excess
of a total amount due upon final determination of an award is
not the equivalent of setoff or credit against accrued, but
unpaid, compensation for benefits paid in excess of 70% of the
amount finally due because of a reduction or rescission of an
original award; reimbursement is made where the total amount
of benefits paid exceeds the total amount due upon final deter-
mination and is the liability of the Second Injury Fund, while
setoff or credit does not require a claimant to pay back any
monies received, but merely allows a subtraction of benefits
already paid from the amount due and owing upon final deter-
mination (MCL 418.862; MSA 17.237[862]).

DISSENTING OPINION BY KAVANAGH, J.

6. WORKERS' COMPENSATION — BENEFITS DURING APPEAL — REIM-
    BURSEMENT.

*An insurance carrier must seek reimbursement from the Second
Injury Fund and not from a worker for workers' compensation
benefits paid during the pendency of an appeal of an award of
benefits where the final determination of the benefits due the
worker rescinds or reduces the original award (MCL 418.862;
MSA 17.237[862]).*

7. WORKERS' COMPENSATION — BENEFITS DURING APPEAL — SETOFF.

*Workers' compensation benefits paid during the pendency of an
appeal of an award of benefits may be credited against benefits
due a worker upon final determination only where the original
award is affirmed (MCL 418.862; MSA 17.237[862]).*

8. WORKERS' COMPENSATION — BENEFITS DURING APPEAL — REIM-
    BURSEMENT.

*The Legislature intended to provide a unitary system of reim-
bursement for insurance carriers which, during the pendency of
an appeal of an award, overpay workers' compensation benefits
finally determined to be due a worker by requiring that reim-
bursement be sought from the Second Injury Fund and not the
worker, even though the result may be a windfall to the worker
(MCL 418.862; MSA 17.237[862]).*

*Kelman, Loria, Downing, Schneider & Simpson*
(by *Ann Curry Thompson)* for the plaintiff.

*Sommers, Schwartz, Silver & Schwartz, P.C.* (by
*John F. Vos, III,* and *Richard D. Toth),* for Phil's
Quality Market and Buckeye Union Insurance
Company.

*Frank J. Kelley,* Attorney General, *Louis J.
Caruso,* Solicitor General, and *Joseph M. Binno,*
Assistant Attorney General, for the Second Injury
Fund.

Amicus Curiae:

*Conklin, Benham, McLeod, Ducey & Ottaway,*

*P.C.* (by *Martin L. Critchell),* for Michigan Self-Insurers Association.

BOYLE, J. This workers' compensation case focuses on the interpretation of MCL 418.862; MSA 17.237(862),[1] the so-called 70% provision. Specifically, we address the issue whether an employer (or its workers' disability compensation carrier) who has paid benefits to an employee during the appeal of a workers' compensation case may claim those payments as pre-payments or credit against the employer's ultimate liability or, stated conversely, whether the exclusive source of the employer/carrier's recovery, on the facts here presented, is the Second Injury Fund.

I

The plaintiff, Kurt Hiltz, was a 17-year-old minor employed by defendant Phil's Quality Market (defendant Buckeye Union's compensation insured). On May 10, 1974, plaintiff suffered a compensable injury to his right hand. Defendant car-

---

[1] Section 862 provides as follows:

"A claim for review filed pursuant to sections 859 or 861 shall not operate as a stay of payment to the claimant of 70% of the weekly benefit required by the terms of the hearing referee's award. Payment shall commence as of the date of the hearing referee's award and shall continue until final determination of the appeal or for a shorter period if specified in the award. Benefits accruing prior to the referee's award shall be withheld until final determination of the appeal. If the weekly benefit is reduced or rescinded by a final determination, the carrier shall be entitled to reimbursement in a sum equal to the compensation paid pending the appeal in excess of the amount finally determined. Reimbursement shall be paid upon audit and proper voucher from the second injury fund established in chapter 5. If the award is affirmed by a final determination, the carrier shall pay all compensation which has become due under the provisions of the award, less any compensation already paid. Interest shall not be paid on amounts paid pending final determination. Payments made to the claimant during the appeal period shall be considered as accrued compensation for purposes of determining attorneys' fees under the rules of the bureau."

rier voluntarily paid compensation of $56 per week[2] from May 11, 1974, through October 4, 1974, when plaintiff returned to work until he was laid off on December 31, 1974.

Plaintiff filed a petition for hearing on December 16, 1974. The decision of the hearing referee was rendered on August 28, 1975. Plaintiff was awarded 136 weeks of specific loss benefits at the rate of $128 per week[3] for the loss of the industrial use of the thumb (65 weeks), index finger (38 weeks), and middle finger (33 weeks) of his right hand. See MCL 418.361(2); MSA 17.237(361)(2). The award also included reimbursement of $545 rehabilitation training expense. The hearing referee further found that at the conclusion of the specific loss period, plaintiff would be entitled to partial disability benefits in accordance with MCL 418.361; MSA 17.237(361).

The employer appealed this decision to the Workers' Compensation Appeal Board. While this appeal was pending, MCL 418.862; MSA 17.237(862) became effective. Pursuant to its provisions, the employer paid 70% of the $128 award for specific loss benefits from August 28, 1975, through December 18, 1976. After this date, the employer continued 70% payments for partial disability benefits.

On December 6, 1977, the WCAB entered its order modifying the hearing referee's decision. The WCAB found that plaintiff had not proven the loss of the industrial use of his thumb; thus, the award of 65 weeks of specific loss benefits was reversed.

---

[2] The amount of compensation was figured on plaintiff's actual earnings in part-time employment, doubled because of his illegal employment as a minor. See MCL 418.161; MSA 17.237(161). A total of $1,176 was paid voluntarily.

[3] This amount reflects double compensation because of plaintiff's status as a minor. See fn 2.

Specific loss benefits for the loss of the industrial use of the right index and middle fingers, totaling 71 weeks from the date of injury, were affirmed. Thereafter, plaintiff would receive benefits for a continuing partial disability in accordance with MCL 418.361; MSA 17.237(361). The reimbursement for rehabilitation benefits was denied.

The employer/carrier's application for leave to appeal to the Court of Appeals was denied on March 31, 1978.

Thereafter, in its computation of benefits, the employer/carrier credited all payments made to the plaintiff against the total specific loss benefits due—$9,088.00 (71 weeks × $128). There is no dispute regarding the employer/carrier's entitlement to a credit for the benefits voluntarily paid between May 10, 1974, and October 4, 1974; to a credit for 70% benefits paid from August 28, 1975 (the date of hearing referee's decision), to September 12, 1975 (the termination of the WCAB award of 71 weeks of specific loss benefits); and to a credit for 70% of the wage loss differential benefits paid from September 13, 1975, to December 6, 1977.[4] However, credit was also claimed for the 70% benefits paid from September 19, 1975, to December 16, 1976, the 65-week period for the loss of the industrial use of the thumb to which the WCAB found plaintiff not to be entitled. Plaintiff took exception to this credit.

On May 18, 1978, the employer/carrier filed a petition for determination of rights with the Bureau of Workers' Disability Compensation, joining the Second Injury Fund as a party.

---

[4] The parties are in agreement regarding the computation of the wage loss differential benefits. Payment of these benefits will be reflected in defendants' ultimate liability to the plaintiff. These benefits will not be specifically addressed in this opinion because the controversy herein centers on the compensation payable for the specific loss benefits.

A hearing was held on July 17, 1978, and, on October 4, 1978, the hearing referee entered a decision finding that the 70% benefits paid during the 65-week period were benefits in excess of the WCAB award. The referee found that these benefits could not be credited against the remaining compensation due but, rather, that reimbursement to the carrier must come from the Second Injury Fund. This decision was affirmed by the WCAB on October 9, 1979.

In an unpublished memorandum opinion, the Court of Appeals reversed. Docket Nos. 48272, 48273 (April 30, 1981). Adopting the reasoning of *Stewart v Saginaw Osteopathic Hospital,* 100 Mich App 502; 298 NW2d 911 (1980), *lv den* 410 Mich 916 (1981), the Court concluded that the employer/carrier could set off payments made under the 70% statute. This Court granted leave to appeal. 414 Mich 866 (1982).

## II

The controversy in this case centers on the interpretation of MCL 418.862; MSA 17.237(862). In resolving disputed interpretations of statutory language, it is the function of a reviewing court to effectuate the legislative intent. *Aikens v Dep't of Conservation,* 387 Mich 495, 499; 198 NW2d 304 (1972). If the language used is clear, then the Legislature must have intended the meaning it has plainly expressed, and the statute must be enforced as written. *In re Certified Questions,* 416 Mich 558, 567; 331 NW2d 456 (1982); *Dussia v Monroe County Employees Retirement System,* 386 Mich 244, 249; 191 NW2d 307 (1971).

There is no disagreement regarding the meaning of the first portion of § 862 which reads as follows:

"A claim for review filed pursuant to sections 859 or 861 shall not operate as a stay of payment to the claimant of 70% of the weekly benefit required by the terms of the hearing referee's award. Payment shall commence as of the date of the hearing referee's award and shall continue until final determination of the appeal or for a shorter period if specified in the award. Benefits accruing prior to the referee's award shall be withheld until final determination of the appeal."

During the pendency of an appeal, 70% of the weekly benefits as determined by the hearing referee are to be paid to the employee from the date of the hearing referee's award until the appeal is finally resolved.

The dispute herein involves the next three sentences of § 862 which we will address *seriatim.* Sentence four of § 862 states:

"If the weekly benefit is reduced or rescinded by a final determination, the carrier shall be entitled to reimbursement in a sum equal to the compensation paid pending the appeal in excess of the amount finally determined."

This language addresses the situation in which the result of the final appeal determination is that the weekly benefit is either reduced or rescinded. In such a situation, if the amount of compensation paid by the employer pending appeal (70% benefits) is more than the amount ultimately found to be due the employee as of the final determination date, then the employer is entitled to be reimbursed for this difference.

The controversy here focuses on the meaning of "in excess of the amount finally determined". Plaintiff contends that the proper interpretation of this language is that, upon final determination of the appeal, the amount in "excess" is all 70%

benefits which were paid for those weeks ultimately found to be weeks for which no benefits are due. The carrier must seek reimbursement for this "excess" from the Second Injury Fund. Utilizing this interpretation, the 70% benefits paid herein during the 65-week period rescinded by the WCAB award are in excess of the amount actually due for that time period and thus subject to reimbursement.

Defendants, on the other hand, contend that "in excess of the amount finally determined" refers to an excess of their total liability to the plaintiff as finally determined. Here, the total amount of specific loss benefits which the WCAB found to be due plaintiff is $9,088. Pursuant to the 70% provision, considerably less than this amount was actually paid. Since additional monies are still owed to the plaintiff under the WCAB award, defendants claim that no "excess" was realized which would be subject to reimbursement.

In our view, plaintiff's construction strains the clear language of the statute. Plaintiff claims that the "excess" applies to those weeks during the pendency of the appeal in which 70% benefits had been paid but, in view of the final award, need not have been paid. Such an analysis is based on a fallacy because the employer/carrier is bound by § 862 to pay 70% benefits throughout the entire time in which the appeal is pending. When the final award is determined, it is immaterial whether or not 70% benefits were paid for "certain weeks" *now* found to be weeks for which no benefits were due,[5] because during the appeal period the employer/carrier *must* pay 70% benefits for each week under the hearing referee's award.

[5] *Cf. McAvoy v H B Sherman Co,* 401 Mich 419, 445, fn 6; 258 NW2d 414 (1977) ("back" 70% benefits included in total accrued benefits).

The key question is not for what period 70% benefits need not have been paid, but, rather, what amount of benefits were not paid while the employer/carrier's appeal was pending which were subsequently found to be owing for a given time period. If, for example, the final award is $10,000, and during the pendency of the appeal plaintiff had been paid $8,000, there is no "excess", and the employer/carrier remains liable for an additional $2,000. On the other hand, if the final award is $10,000, but the 70% benefits totaled $12,000, then an "excess of the amount finally determined" does exist. The employer/carrier is entitled to a reimbursement of $2,000.

The manner in which this reimbursement is paid is explained in sentence five of § 862 which provides as follows:

"Reimbursement shall be paid upon audit and proper voucher from the second injury fund established in chapter 5."

Clearly, liability for reimbursement rests solely with the Second Injury Fund. All parties herein agree that no matter what the final award, the employee is never liable for this reimbursement. *McAvoy v H B Sherman Co,* 401 Mich 419; 258 NW2d 414 (1977).

Plaintiff, however, equates "reimbursement" with the defendants' claimed *credit.* Reimburse means "[t]o pay back, to make restoration, to repay that expended; to indemnify, or make whole". Black's Law Dictionary (5th ed), p 1157. An employee is not required by § 862 to "reimburse" or pay back to the employer any monies received, even if the final award totally abrogates the employee's entitlement to any benefits.

The defendants' contention that they are enti-

tled to credit or offset compensation benefits already paid to the employee against their total liability to the employee is an entirely different concept. Unlike "reimbursement", offset or credit in this context does not require the employee to return monies already acquired, nor will it cause the employee to receive less benefits than those to which the employee is ultimately entitled.

Plaintiff claims that to allow defendants an offset would be in direct conflict with this Court's holding in *McAvoy*. This would follow, however, only if we adopted plaintiff's contention that "reimbursement" and "offset" are synonymous. This we cannot do.

Our clear holding in *McAvoy* was that reimbursement shall be paid solely by the Second Injury Fund. With this, we are in complete agreement. Defendants' desire to be given credit for compensation paid during appeal is an entirely different issue.

Sentence six of § 862 states:

> "If the award is affirmed by a final determination, the carrier shall pay all compensation which has become due under the provisions of the award, less any compensation already paid."

This language addresses those cases in which the award of the hearing referee is affirmed. All parties herein agree that a portion of the hearing referee's award for specific loss benefits was affirmed (71 of the 136 weeks).

Plaintiff contends that the correct interpretation of sentence six results in credit only for those 70% benefits paid during the actual 71-week time period (that portion of the award which was affirmed). Plaintiff's interpretation *adds* words of limitation to the statute which do not exist.

Defendants imply that "all compensation" refers to the amount of their *total* liability to the plaintiff. This interpretation *disregards* words of limitation which are in the statute.

We are bound by the plain meaning of sentence six. The carrier is to pay *all* awarded compensation "which has become due" as of the final determination of the appeal, "less *any* compensation already paid". In the case at bar, the total specific loss benefits awarded to the plaintiff had become due prior to the final determination date. From this total amount "any compensation already paid" by the employer/carrier must be subtracted.

The WCAB refused to allow credit for the 70% benefits which had been paid during the rescinded 65-week period because in its opinion these benefits were not "compensation". The WCAB stated that 70% benefits paid during weeks which are ultimately rescinded "effectively change character and no longer constitute compensation, but rather a form of social payment designed to meet workers' needs in the face of appellate delay problems". 1979 WCABO 2617, 2620.

We cannot accept the conclusion that benefits which are "compensation" prior to the final determination on appeal may somehow change character and no longer be "compensation" subsequent to the final determination. Such an analysis finds no support in the clear language of the statute itself.

Clearly, any benefits awarded by a hearing referee are compensation, for compensation is what a hearing referee is empowered to award. The amount paid pending appeal is not an arbitrary amount to be applied in all cases. Rather, it is based on the amount of compensation awarded by the hearing referee in a particular case. Section 862 provides that while an appeal of the hearing

referee's decision is pending the employer/carrier must pay 70% of the awarded compensation. The 70% benefits are "compensation" because they are a percentage of the total compensation award.

This is *not* a new interpretation of § 862. In *McAvoy* we stated:

"[T]he 70% statute clearly does not retroactively alter existing substantive law by changing the amount of the employer's liability. The 70% statute only effectuates a *procedural* change; employers and carriers are now required to make immediate payment pending the appeal. However, the substantive benefits (the '100%' total) ultimately owed, or not owed, remain exactly the same." 401 Mich 459.

Moreover, the Legislature refers to these 70% benefits as "compensation". The final sentence of § 862 states:

"Payments made to the claimant during the appeal period shall be considered as accrued compensation for purposes of determining attorneys' fees under the rules of the bureau."

Attorney fees are not computed until after the final determination of the appeal. It is this time period to which the above-quoted sentence addresses itself, and the previously paid 70% benefits are referred to as "accrued *compensation*".

## III

The case at bar does not neatly fit into either of the § 862 categories: it is neither an award which is "reduced or rescinded" (sentence four), nor an award which is "affirmed" (sentence six). The situation presented herein is a hybrid of these two categories. The hearing referee's award for 71

weeks of specific loss benefits was affirmed, whereas, the award of 65 weeks of specific loss benefits for the loss of industrial use of plaintiff's thumb was rescinded. An attempt to force the facts of this case into a single category would lead to unreasonable consequences which we cannot condone. *In the Matter of Karen Marable,* 90 Mich App 7, 10; 282 NW2d 221 (1979), *lv den* 407 Mich 871 (1979).

Plaintiff's construction of the statute requires that, in addition to the 70% benefits which the employer has paid during the pendency of the appeal, the employer must also pay the total amount awarded for 71 weeks of specific loss benefits. In the instant case, this construction would permit the plaintiff to retain the approximately $5,800 which he has already received and, also, allow him to recover an additional $9,088 in specific loss benefits.[6] Clearly, this would result in double recovery which is repugnant to the very principles of workers' compensation. *Stanley v Hinchliffe & Kenner,* 395 Mich 645, 657; 238 NW2d 13 (1976), *reh den* 396 Mich 976 (1976).

The Legislature's intent in compelling 70% benefits to be paid pending appeal was "to provide those who had obtained a favorable decision at the hearing referee level with some immediate ongoing source of sustenance". *McAvoy, supra,* p 460, fn 18. This purpose of the statute was accomplished by the employer/carrier's payment of the 70% benefits to plaintiff during the appeal period. The purpose of § 862 was *not* to authorize double recovery.

Application of plaintiff's position to a continuing award situation illustrates its unreasonableness. If

---

[6] See p 342, *ante,* for those benefits which plaintiff recognizes as credit.

a continuing award is affirmed, § 862 unequivo-
cally states that the employer is entitled to credit
for "any compensation already paid". Thus, the
employee in such a situation is entitled to the 30%
compensation benefits which accumulated during
the appeal period and no more, because the em-
ployee has already received 70% of the award.

Acceptance of plaintiff's position in the present
context, by comparison, would permit plaintiff to
receive, in addition to the 30% accrued benefits,
full payment for the closed award (specific loss
benefits). Thus, the employee whose award is to-
tally affirmed on appeal would be in a worse
position than an employee, such as plaintiff, whose
award is only affirmed in part. We cannot autho-
rize such an incongruous result.

Plaintiff is concerned that if we adopt defen-
dant's position carriers will seek reimbursement
from employees for the 70% benefits on the basis
of compensation benefits previously awarded and
paid prior to the present action. This fear is un-
founded because, as we held in *McAvoy* and re-
affirm, an employee is not required to pay back
benefits received pending appeal. Reimbursement
must come from the Second Injury Fund.[7]

Plaintiff also expresses a concern that the carri-
er's credit will extend indefinitely into the future
against compensation that may become due. How-
ever, this fear is also unfounded. Any credit that
an employer/carrier may take is limited by the
language of § 862 itself which states that "the
carrier shall pay all compensation *which has be-
come due* under the provisions of the award, less
any compensation already paid". Credit may be

---

[7] Plaintiff's claimed conflict with MCL 418.833(2); MSA
17.237(833)(2) is erroneous, as we explained in *McAvoy,* pp 449-450, fn
11.

taken only at one point (the final determination date) and only against the amount of compensation *which has become due* during the appeal period, ending with the final determination date. For example, no credit may be taken against plaintiff's continuing partial disability benefits which became due after the final determination date.[8]

We cannot accept plaintiff's contention that defendants' only recourse is to the Second Injury Fund. To do so would mean that plaintiff would *twice* receive payment for the same specific loss injury. Plaintiff is entitled to 71 weeks of specific loss benefits, and this is what he will receive. To permit the employer/carrier to offset compensation already paid will not penalize any of the parties and will comport with the plain meaning of § 862. Plaintiff will receive the total amount of specific loss benefits to which he is entitled. The employer/carrier will pay the total amount of compensation for which it is liable.

## IV

We are also persuaded that the broad purpose of MCL 418.862; MSA 17.237(862) is not offended by the result here reached.

The objective of the appellate process is the prompt and proper determination of valid claims, irrespective of which party initiates the appeal. There is no social interest in the protection either of invalid awards to claimants or of invalid decisions favoring employers.

---

[8] Other jurisdictions have also recognized an employer/carrier's right to seek an offset in certain limited situations. See, *e.g., Johnston v Tony's Pizza Service,* 232 Kan 848; 658 P2d 1047 (1983); *Hicks v Fred Meyer, Inc,* 57 Or App 68; 643 P2d 1311 (1982); *Belam Florida Corp v Dardy,* 397 So 2d 756 (Fla App, 1981).

To the evaluation of the merit of the claim vis-à-vis the cost of further review, inherent in every disappointed litigant's decision to seek further review, the employer/carrier litigant must add the 70% benefits provided by the statute. The purpose of the provision, as recognized in *McAvoy,* was to ensure that workers who have been awarded presumptively valid benefits receive immediate sustenance during appellate delays and to discourage frivolous or marginal appeals by employers/carriers.

The statutory scheme provides incentives for all affected parties to seek prompt appellate relief at each juncture in the process where they perceive that the result is unacceptable. Thus, as explained by the late Justice MOODY in *McAvoy, supra,* 401 Mich 443-445, if an initial award is appealed and terminated, the 70% benefits are terminated. If appealed and reduced, the 70% provision applies only to the new award (in the event another appeal is taken). Likewise, if a claimant appeals a vacation or modification at a lower level and obtains reinstatement, the 70% benefits resume.

If the employer/carrier's assessment of merit in the issue is correct and the award is reduced or rescinded, it is entitled to reimbursement from the Second Injury Fund for the amount paid which exceeds its final liability. If the appellant loses and the award is affirmed, we have held here that it is liable for the amount determined below, less any payments made toward discharge of that liability. Barring recoupment of excess payments from the claimant is a constitutionally permissible cost of the system justified by the need to protect valid awards during lengthy appellate processes. While this result permits a claimant to retain sums wrongfully paid, the Legislature has expressed its

judgment that this is a legitimate cost to be undertaken in the interest of providing prompt payment of valid benefits to a disabled worker.

The fact that such recoupment is not available from claimants does not impinge upon the basic statutory objective, that is, the prompt determination of valid claims, whether those of the disabled worker or the employer/carrier.

We are unable to conclude, however, that a double recovery by a claimant, on the facts presented here, would accord with the statutory purpose. No impediment to the promotion of meritorious employer appeals or the discouragement of marginal employer appeals can be found in permitting the credit here approved.

In short, nothing in the history, purpose, or language of the statute or of *McAvoy* supports the construction urged by plaintiff. Simply stated, it does not follow from the fact that the employer may be reimbursed where the 70% benefits paid exceed the amount finally determined to be due that he must be so reimbursed if the 70% benefits do not exceed the amount finally determined.

CONCLUSION

We find that under MCL 418.862; MSA 17.237(862), upon final determination of an appeal, if amounts in addition to the total of the 70% paid are found to be owed to plaintiff by defendant employer/carrier for the "pending appeal" period, the employer/carrier may receive credit against this amount for any benefits paid pending appeal, *i.e.,* 70% benefits. Any benefits which become due to the plaintiff subsequent to the final determination date are not subject to the employer/carrier credit. We further reaffirm our holding in *McAvoy*

that when an employer/carrier has paid compensation benefits during an appeal period which total more than the total amount due as of the final determination date, reimbursement of any excess must come solely from the Second Injury Fund.

The decision of the Court of Appeals is affirmed.

WILLIAMS, C.J., and RYAN, BRICKLEY, and CAVANAGH, JJ., concurred with BOYLE, J.

KAVANAGH, J. *(for reversal).* This case involves the question whether under the 70% provision of the workers' compensation act, MCL 418.862; MSA 17.237(862), a carrier may claim credit for overpayment of benefits against the reduced award for continuing benefits as finally determined, or whether such overpayment can be recovered only from the Second Injury Fund.

We hold that the carrier may not take credit as claimed, but must seek reimbursement from the Second Injury Fund.

The seventeen-year-old plaintiff injured his right hand on May 10, 1974, while attempting to clean out a meat grinder while employed by Phil's Quality Market. He sought workers' compensation benefits and was awarded 136 weeks of specific loss benefits for loss of the industrial use of his right thumb and the first and second fingers of his right hand, and reimbursement of $545 in rehabilitation training expense. The August 28, 1975, decision of the hearing referee further found plaintiff to be disabled in the general field of unskilled labor and entitled to double compensation under the act as an illegally employed minor.

The insurance carrier appealed the decision of the referee and paid the 70% benefits during the pendency of the appeal as required by MCL 418.862; MSA 17.237(862). By a decision of Decem-

ber 6, 1977, the WCAB modified the decision of the referee and held that plaintiff was entitled to only 71 weeks of specific loss benefits for industrial loss of the use of the right index and middle fingers. The decision further provided that the employer "have credit for all compensation voluntarily paid". Defendants' application for leave to appeal was denied by the Court of Appeals on March 31, 1978.

Thereafter, when the carrier, pursuant to the computation of benefits, took credit for all payments made including the payments made pursuant to MCL 418.862; MSA 17.237(862), plaintiff took exception and sought review. By a decision of October 4, 1978, the hearing referee found that plaintiff was entitled to keep excess 70% payments and that the carrier should seek reimbursement for excess payments from the Second Injury Fund, and not from plaintiff. The WCAB affirmed by decision of October 9, 1979.

In an unpublished memorandum opinion of April 30, 1981, the Court of Appeals reversed, adopting the reasoning of *Stewart v Saginaw Osteopathic Hospital,* 100 Mich App 502; 298 NW2d 911 (1980), and concluding that the employer's carrier could use payments made under the 70% statute to reduce the amount that it was required to pay plaintiff "for the closed award preceding the 70% payment".

The statute makes provision for credit of payments already made if an award is affirmed, and for reimbursement of the overpayment if the award is reduced or rescinded. It makes no provision for credit against the continuing payments or otherwise if the award is reduced.

In *Stewart,* p 509, the Court of Appeals explained its holding:

"What should be done with the remaining $1,361.09 which the WCAB found that the claimant is entitled to? Should she be permitted to retain the $5,558.10 paid but not owed by the carrier plus receive actual payment of $1,361.09 for a total of $6,919.19 when she is entitled to only $1,361.09? We hold that she should not. To hold otherwise would result in a windfall to the claimant in the amount of $5,558.10. This we will not permit."

The idea that a court will or will not "permit" a windfall is a misperception of the proper function of a court. Whether or not to permit a windfall under particular circumstances is a policy decision within the ambit of legislative prerogative. If the statute is constitutional the legislative determination to allow the windfall should be enforced by the court whatever its reservations regarding, or disagreement with, the policy.

Admittedly, the statutory provision that recoupment of a payment subsequently determined to be excessive or not proper must be obtained from the Second Injury Fund rather than the worker who received it results in a windfall to that worker. So too the inability to credit a subsequently determined overpayment on one disability against continuing liability on another disability results in a windfall to the injured person. The Legislature certainly could have prevented such a windfall in either circumstance by appropriate provisions had it so intended. It did not do so.

The provision held to allow the windfall in the first instance provides no logical basis for a holding to disallow it in the second. There is nothing in this statutory provision which will support a conclusion of legislative intent to deny a windfall under either circumstance.

We rejected that notion in *McAvoy v H B Sherman Co,* 401 Mich 419; 258 NW2d 414 (1977), when we held the statute to be constitutional.

We said in *McAvoy,* pp 446, 449, "The clear wording of the statute provides that reimbursement for benefits paid during the pendency of an appeal, which subsequently reduces or rescinds those benefits, 'shall be paid * * * from the Second Injury Fund'."

"The Michigan Legislature elected to provide a unitary system of reimbursement for carriers via the Second Injury Fund; this was the Legislature's prerogative and we respect it."

The statute provides for reimbursement—not credit—if the benefits are reduced or rescinded.

The statute here does not employ the word "credit" at all. The concept of credit comes into play only when the award is affirmed. Then the statute provides for payment of all compensation due "less any compensation already paid". This, in a sense, is a credit.

Here the award was reduced by the final determination. The WCAB correctly held that all that was provided under the statute in this circumstance was reimbursement from the Second Injury Fund.

The judgment of the Court of Appeals is reversed, and the order of the Workers' Compensation Appeal Board is reinstated.

LEVIN, J., concurred with KAVANAGH, J.