## In re HARRIS ESTATE
## HARRIS v DAVIS

Docket No. 81077. Submitted August 7, 1985, at Lansing. Decided May 20, 1986.

Ten days before her death, Wilhelmena Harris drafted a will leaving her entire estate to her children. The Ingham Probate Court thereafter appointed Betty Davis as personal representative of the estate. Norvel Harris, the decedent's surviving spouse, elected to take against the will and petitioned for a homestead allowance and exempt property under the Revised Probate Code. At the hearing on Norvel Harris's petition, the personal representative contended that petitioner had forfeited his right to elect against the decedent's will and to claim the statutory allowances because petitioner had emotionally deserted and was emotionally absent from the decedent prior to her death, despite the fact that petitioner had resided in the decedent's house for brief periods during the year which preceded her death. The probate court, Donald S. Owens, granted petitioner's claims, after ruling that the personal representative had failed to establish any of the grounds for a forfeiture of petitioner's rights to elect against the will and to claim the allowances under the Revised Probate Code. The personal representative appealed. *Held:*

The probate court properly ruled that petitioner had not forfeited his rights to elect against the will and to claim certain

REFERENCES

Am Jur 2d, Statutes §§ 142 *et seq.*, 223 *et seq.*

Am Jur 2d, Wills §§ 1652 *et seq.*

Prior institution of annulment proceedings or other attack on validity of one's marriage as barring or estopping one from entitlement to property rights as surviving spouse. 31 ALR4th 1190.

Abandonment, desertion, or refusal to support on part of surviving spouse as affecting marital rights in deceased spouse's estate. 13 ALR3d 446.

Effect of extrajudicial separation on surviving spouse's right to widow's allowance. 34 ALR2d 1056.

See also the annotations in the ALR3d/4th Quick Index under Wills.

allowances under the Revised Probate Code. The personal representative failed to establish that petitioner was wilfully and physically absent from the decedent, physically separated from the decedent, or wilfully neglected or refused to provide support for the decedent for at least one continuous year prior to the death of the decedent.

Affirmed.

D. E. HOLBROOK, JR., J., concurred in the result but disagreed that a surviving spouse must intend to give up his rights in the marriage before his right to elect against the will or to claim certain allowances under the Revised Probate Code may be forfeited. He opined that such intent is irrelevant when determining whether a surviving spouse has deserted, neglected, or absented himself from the deceased spouse for more than one year prior to death.

OPINION OF THE COURT.

1. STATUTES — JUDICIAL CONSTRUCTION — DICTIONARY DEFINITIONS.

The primary goal of judicial statutory interpretation is to ascertain and give effect to the intent of the Legislature; dictionary definitions of words used in a statute are appropriate guides in achieving this result.

2. STATUTES — JUDICIAL CONSTRUCTION.

A court, when construing a statute, must give effect to every phrase, clause and word as far as possible; one part of the statute should not be construed so as to render another part nugatory.

3. WILLS — REVISED PROBATE CODE — HUSBAND AND WIFE — ELECTION AGAINST WILLS.

A surviving spouse does not have a right of election against the will of his deceased spouse or a right to a homestead allowance, additional rights to property and assets, a maintenance allowance, or a right of occupancy in the dwelling house, as provided by the Revised Probate Code where the surviving spouse did any of the following for at least one continuous year prior to the decedent's death: (1) was wilfully and physically absent from the deceased spouse, (2) deserted the deceased spouse, i.e., physically separated from the deceased spouse, or (3) wilfully neglected or refused to provide support for the deceased spouse if so required by law (MCL 700.282, 700.285 to 700.288, 700.290; MSA 27.5282, 27.5285 to 27.5288, 27.5290).

Concurrence by D. E. Holbrook, Jr., J.

4. Wills — Revised Probate Code — Husband and Wife — Elec-
   tion Against Wills.
   A *surviving spouse forfeits his right to elect against the will of*
   *his deceased spouse when the surviving spouse has wilfully*
   *deserted, neglected, or absented himself from the deceased*
   *spouse for more than one year prior to death, regardless of*
   *whether the surviving spouse intended to give up such rights*
   *(MCL 700.290; MSA 27.5290).*

*Charles A. Palmer,* for plaintiff.

*Doyle Group Attorneys, P.C.* (by *Jane A. Kle-*
*pac*), for defendant.

Before: Hood, P.J., and D. E. Holbrook, Jr., and
D. P. Kerwin,\* JJ.

Per Curiam. This action arises from a decision
by the personal representative of the Estate of
Wilhelmena Harris, Betty Davis, to deny the sur-
viving spouse, Norvel Harris, a homestead allow-
ance and selection of exempt property from the
estate. Norvel petitioned the Ingham County Pro-
bate Court for supervision of the estate and allow-
ance of the requested property. After a hearing,
the probate judge granted Norvel's petition. The
personal representative appeals as of right.

Wilhelmena Harris and Norvel Harris were
married on June 6, 1970. On November 25, 1983,
Wilhelmena died. Her will, drafted ten days before
her death, left her entire estate to her four chil-
dren.

The inventory of Wilhelmena's estate consisted
of personal property valued at $11,250 and real
estate valued at $38,500. Norvel elected to take
against the will and petitioned for a homestead
allowance and exempt property. The property re-
quested consumed all of the personal property in

---

\* Recorder's court judge, sitting on the Court of Appeals by assign-
ment.

the estate. Consequently, the personal representative denied Norvel's petition based upon MCL 700.290; MSA 27.5290, which extinguishes a surviving spouse's rights under certain enumerated circumstances.

At the hearing to determine whether Norvel's claims should be allowed, the probate court excluded any evidence of the relationship between Norvel and Wilhelmena, finding that the only issue under the statute was whether the surviving spouse was physically absent, physically deserted the other, or wilfully neglected to provide legally required support for the other for one continuous year or more immediately preceding Wilhelmena's death.

The sole question on appeal is whether the trial court properly interpreted the statute.

The Revised Probate Code provides that a surviving spouse may elect against the will of his deceased spouse, MCL 700.282; MSA 27.5282, and may claim certain allowances from the estate, MCL 700.285 to 700.288; MSA 27.5285 to 27.5288. However, MCL 700.290; MSA 27.5290 states that the rights provided by such statutes are forfeited if the surviving spouse

> did any of the following for 1 year or more previous to the death of the deceased spouse:
>
>     (a) Was wilfully absent from the decedent spouse.
>
>     (b) Deserted the decedent spouse.
>
>     (c) Wilfully neglected or refused to provide support for the decedent spouse if so required by law.

The personal representative of the estate in this case claims that the intent of the Legislature was to give the surviving spouse a part of the estate when he has emotionally and financially supported

the deceased spouse. To fulfill this intent, the personal representative argues, the surviving spouse's emotional absence or desertion should be sufficient to extinguish such rights in the estate.

The personal representative claims that Norvel falls under the provisions of MCL 700.290; MSA 27.5290 as so interpreted. Testimony of Wilhelmena's son indicated that she had filed for a divorce but the divorce had not been granted because of her death. He further testified that Norvel had resided at Wilhelmena's house for only short periods of time during the year prior to her death and that Norvel had refused to finance a trip to the Mayo Clinic for the purpose of treating Wilhelmena's cancer. Consequently, her son paid for both Norvel's and Wilhelmena's transportation to the Mayo Clinic.

We find that the trial court properly interpreted the statute at issue and that the personal representative did not establish that Norvel's conduct constituted a forfeiture of these rights under the Revised Probate Code.

The primary goal of judicial statutory interpretation is to ascertain and give effect to the intent of the Legislature. *Hiltz v Phil's Quality Market,* 417 Mich 335, 343; 337 NW2d 237 (1983); *Bailey v Detroit Automobile Inter-Ins Exchange,* 143 Mich App 223; 371 NW2d 917 (1985). The words of a statute are the best source for ascertaining the Legislature's intent. *Great Lakes Steel Division of National Steel Corp v Michigan Public Service Comm,* 143 Mich App 761; 373 NW2d 212 (1985). *Bailey, supra.* This Court finds that dictionary definitions are appropriate guides in achieving this result. *Great Lakes Steel, supra,* citing *Fenton Area Public Schools v Sorenson-Gross Construction Co,* 124 Mich App 631, 639; 335 NW2d 221 (1983).

With these rules of construction in mind, we

turn to the question of whether the language in the forfeiture statute, MCL 700.290; MSA 27.5290, encompasses emotional as well as physical absence from or desertion of the decedent spouse.

The lower court referred to the definition of "absent" in Black's Law Dictionary (5th ed), p 8, which states: "Being away from; at a distance from, not in company with." We agree with the court that this definition indicates physical absence.

We further find the alternative definition in Webster's New Collegiate Dictionary, (1st ed), p 4, referring to inattentiveness to be inapplicable to the statute at issue.

Where an absurd result is reached through a literal construction of the statute, an exception or qualification is presumed to have been intended. *Scholten v Rhoades,* 67 Mich App 736, 745; 242 NW2d 509 (1976). Since all of us are subject to inattentiveness, whether wilful or not, at some time or another, such an interpretation of absent would render the statute so broad in application as to put in jeopardy every surviving spouse's right to election under the Revised Probate Code. We do not believe that this was the intent of the Legislature.

The same logic is applicable to the interpretation of "desert" under the statute. The dictionary meaning of this word is to withdraw from or leave with an intention to cause a permanent separation. Black's, *supra,* p 307. Unless the meaning of "desert" is confined to physical separation, we doubt that an intent to cause a *permanent* separation could ever be fairly inferred.

Moreover, we find that the wording of the statute mandates that the physical abandonment or desertion be continuous for at least one year. In construing a statute, effect must be given to every

phrase, clause and word as far as possible; one part of the statute should not be construed so as to render another part nugatory. *Melia v Employment Security Comm,* 346 Mich 544, 562; 78 NW2d 273 (1956).

The statute at issue requires the unacceptable behavior of the surviving spouse to have been "for one year or more previous to the death of the deceased spouse." The use of the word "for," combined with the words "or more," indicates that the unacceptable behavior must have occurred continuously for one year or more directly prior to the death of the deceased spouse. As the probate court properly observed, common usage would require the use of the words "during" or "in" if a lesser proof was intended to satisfy the statute. Cf., MCL 710.51(6); MSA 27.3178(555.51)(6) (a parent's rights to a child may be terminated by adoption only if the noncustodial parent "regularly and substantially" fails to perform certain acts for a period of two years or more before the filing of the petition).

We believe our construction of the statute comports with the Legislature's intent in enacting it. Michigan is not the only jurisdiction which allows a surviving spouse to elect against the deceased spouse's will and select certain statutory allowances. These statutes limit the testator's power to deprive the surviving spouse of his or her common-law or statutory rights in the testator's estate. See 97 CJS, Wills, §§ 1257, 1267, pp 45-47, 85-86.

Given that forfeitures are not favored in law, *Miller v Pond,* 214 Mich 186; 183 NW 24 (1921), this Court reads the forfeiture statute in MCL 700.290; MSA 27.5290 as showing an intent by the Legislature that a spouse must intend to give up his rights in the marriage before such can be lost. (Compare MCL 70.291; MSA 27.5291, which provides that a surviving spouse's rights can be termi-

nated by written agreement or property settlement entered into in anticipation of divorce.) The requisite intent in the statute is shown by actions indicating a conscious decision to permanently no longer be involved in the marriage.

Physical presence in the marital home is strong evidence that the party remains involved in the marriage to some degree and has not intentionally given up any rights thereof. Although it is conceivable that a party may return to the marital home solely for the purpose of destroying what remains of the marriage, it appears unlikely that this will be true in most cases. Rather, we perceive the statute as providing the "locus penitentiae" of at least one year for the husband and wife to become reconciled or fulfill a legal obligation of support before the rights can be terminated. See *In re Zanfino's Estate,* 375 Pa 501; 100 A2d 60 (1953).

Under this construction of the forfeiture statute in § 290 of the Revised Probate Code, we conclude that Norvel did not forfeit his statutory rights to elect against the will or to claim allowances pursuant to §§ 285 to 288. The estate's proofs failed to show that Norvel wilfully and physically absented himself from or deserted Wilhelmena for a continuous period of one year or more directly prior to her death. The allegations of wilful nonsupport likewise remain unestablished as the proofs did not indicate that Norvel in fact failed to support Wilhelmena when he had the means to do so.

Affirmed.

D. E. HOLBROOK, JR., J. *(concurring),* I concur separately because I do not agree with the majority where they say that

this Court reads the forfeiture statute in MCL 700.290; MSA 27.5290 as showing an intent by the

Legislature that a spouse must intend to give up his rights in the marriage before such can be lost.

In my opinion the intent of the spouse is irrelevant. All that matters is whether the spouse has wilfully deserted, neglected or absented himself from the spouse for more than one year prior to the death.

I agree with the result and I join in the affirmance.