FULLER v TEXTRON, INC

Docket No. 99715. Submitted January 13, 1988, at Lansing. Decided July 18, 1988.

Plaintiff, Jack W. Fuller, doing business as Fuller's Sport and Lawn Center, sells horticultural and grounds maintenance equipment to retail customers. Defendant Homelite Division of Textron, Inc., manufactured and supplied equipment sold by plaintiff. The parties entered a contractual relationship in August, 1972, by way of a written dealer agreement under which plaintiff became an authorized Homelite dealer. The agreement terminated in July, 1973, pursuant to its terms. On October 20, 1981, the parties executed two written agreements: a security agreement and a finance plan agreement. On March 11, 1985, plaintiff notified defendants, Textron, Inc., Homelite Division of Textron, Inc., Textron Finance Corporation, and Textron Acceptance Corporation, that he was terminating what he termed his franchise agreement with defendants and requested instructions for the return of inventory to defendants. The defendants refused plaintiff's demand for repurchase. Plaintiff then brought an action in the Clinton Circuit Court seeking, inter alia, a declaratory judgment that the Farm and Utility Equipment Franchise Act applied to the relationship between the parties. Defendants filed a counterclaim for $90,800.74 allegedly owed by plaintiff. The trial court, Timothy M. Green, J., determined that there was no franchise agreement and that the act did not govern the instant case. A judgment for $90,800.74 against the plaintiff was entered on defendant's counterclaim. Plaintiff appealed.

The Court of Appeals *held:*

1. The trial court erred in concluding that there was no franchise agreement. Both the dealer agreement and the security agreement were franchise agreements.

2. The act applies to these parties.

3. The act does not require defendants to repurchase the

REFERENCES

Am Jur 2d, Franchises §§ 4 *et seq.,* 24 *et seq.,* 44 *et seq.*
See the Index to Annotations under Franchises.

inventory since neither the finance plan nor the security agreement required plaintiff to maintain an inventory.

Affirmed.

1. FRANCHISES — FARM AND UTILITY EQUIPMENT FRANCHISE ACT.

A franchise agreement under the Farm and Utility Equipment Franchise Act is a written or implied contract, sales agreement, or security agreement between a supplier and a dealer by which the dealer is authorized to engage in the business of the retail sale and service of tractors and equipment in accordance with methods and procedures prescribed by the supplier (MCL 445.1452[e]; MSA 19.853[52][e]).

2. FRANCHISES — FARM AND UTILITY EQUIPMENT FRANCHISE ACT — TERMINATION OF FRANCHISE AGREEMENTS — REPURCHASE OF INVENTORY.

The Farm and Utility Equipment Franchise Act provides that a supplier of such equipment is required to repurchase the inventory of a dealer upon termination of a franchise agreement only if the written or implied contract, sales agreement or security agreement which is evidence of the franchise agreement provides that the dealer agrees to maintain an inventory (MCL 445.1453; MSA 19.853[53]).

*Brown & Transeth* (by *Steven A. Transeth*), for plaintiff.

*Butzel, Keidan, Simon, Myers & Graham* (by *Gordon W. Didier* and *William D. Vanderhoef*), for defendants.

Before: SHEPHERD, P.J., and WAHLS and G. B. FORD,* JJ.

SHEPHERD, P.J. Plaintiff appeals a January 5, 1987, judgment dismissing his complaint. The trial court granted judgment in defendants' favor on their countercomplaint and awarded defendants $90,800.74 plus interest and costs.

Plaintiff's retail sales business sells horticultural and grounds maintenance equipment. Defendant

---

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

Homelite Division of Textron, Inc., manufactured and supplied equipment sold by plaintiff. The parties originally entered a contractual relationship in August, 1972, by way of a written dealer agreement under which plaintiff became an authorized Homelite dealer. This agreement, however, terminated in July, 1973, pursuant to its terms. On October 20, 1981, the parties executed two written agreements, the first entitled a "Security Agreement" and the second entitled "Homelite Finance Plan Terms of Sale."

On March 11, 1985, plaintiff notified defendants by letter that he was terminating what he termed his "franchise agreement" with defendants. In his letter, plaintiff asked defendants for instructions for the return of inventory which plaintiff asserted had to be repurchased by defendants pursuant to the Farm and Utility Equipment Franchise Act, MCL 445.1451 *et seq.*; MSA 19.853(51) *et seq.* By letter dated April 2, 1985, defendants refused plaintiff's demand for repurchase claiming the statute was inapplicable to the business relationship existing between plaintiff and defendants.

On July 5, 1985, plaintiff filed a five count complaint. Plaintiff sought, inter alia, declaratory relief. Plaintiff asked the trial court to declare that the act was applicable to the relationship between the parties. Defendants responded by claiming that the act did not govern the relationship between the parties. Defendants also filed a countercomplaint alleging plaintiff owed defendants $90,800.74. On November 3, 1986, the trial court issued a written opinion in the matter which concluded that the act did not govern the instant case. The trial court found no franchise agreement. On January 5, 1987, the trial court entered a judgment against plaintiff in the amount of $90,800.74. Plaintiff now appeals.

We must first determine the applicability of the Farm and Utility Equipment Franchise Act. The operative portion of the act is § 3:

> If a dealer enters into a franchise agreement with a supplier that is evidenced by a written or implied contract, sales agreement, or security agreement in which the dealer agrees to maintain an inventory, and the contract, sales agreement, or security agreement is subsequently terminated, the supplier shall repurchase the inventory of the dealer as provided in this act. The dealer may choose to keep the inventory if the dealer has a contractual right to do so.

"Dealer" is defined as a person engaged in the business of the retail sale of farm tractors and equipment, utility tractors and equipment, or the attachments to or repair parts for that equipment. MCL 445.1452(c); MSA 19.853(52)(c). "Equipment" is defined as machines designed for or adapted and used for agriculture, horticulture, livestock raising, forestry, and grounds maintenance. MCL 445.1452(d); MSA 19.853(52)(d). Plaintiff seems clearly to be a dealer within the meaning of the statute. Plaintiff's Homelite inventory included such items as lawn mowers, lawn tractors, garden tractors, snow throwers, chain saws and string trimmers. Plaintiff was involved in the retail sale of these items which fall within the definition of "utility" equipment. When the language of a statute is clear, it is assumed that the Legislature intended the meaning it has plainly expressed. *Hiltz v Phil's Quality Market,* 417 Mich 335, 343; 337 NW2d 237 (1983). Where a statute supplies its own glossary, a court must apply the terms as expressly defined. *Detroit v Muzzin & Vincenti, Inc,* 74 Mich App 634, 639; 254 NW2d 599 (1977), lv den 400 Mich 858 (1977).

"Supplier" is defined as a manufacturer, wholesaler, or distributor of farm and utility tractors and farm and utility equipment, or the attachments to or repair parts for that equipment. MCL 445.1452(i); MSA 19.853(52)(i). Defendants meet that definition. "Franchise agreement" is defined as a written or implied contract, sales agreement, or *security agreement* between a supplier and a dealer by which the dealer is authorized to engage in the business of the retail sale and service of tractors and equipment *in accordance with methods and procedures prescribed by the supplier.* MCL 445.1452(e); MSA 19.853(52)(e).

The parties stipulated to the facts in this case and both agree that they entered into a security agreement on October 20, 1981. On that same date the parties also entered into a finance plan agreement. We disagree with the trial court's conclusion that there was no franchise agreement. We note that the "Dealer Agreement," which terminated in 1973, was quite clearly a franchise agreement under the terms of the statute. The Dealer Agreement quite specifically sets forth terms under which the dealer will sell the goods provided by the supplier, including terms regarding displays, advertising, inventory and internal accounting procedures.

The "Security Agreement" entered into in 1981 more closely resembles a security agreement which any creditor and debtor might enter merely to protect the secured party's interests. However, there are sufficient "methods and procedures prescribed by the supplier" in this security agreement to qualify as a franchise agreement under the statute. MCL 445.1452(e); MSA 19.853(52)(e). It provides for the sale of the collateral in the regular course of business by the dealer. It provides that the dealer must keep the merchandise "sepa-

rate and capable of identification as the property" of the supplier and requires separate accounting measures to account for the property held by the dealer. Finally, the debtor (dealer) "shall report promptly to the Secured Party any merchandise dispute with the customers arising out of the said resale of the Collateral." This provision plainly has little to do with the supplier's security interest and much to do with customer satisfaction and supplier assurance that the dealer is an appropriate retailer of its goods. Thus, the security agreement was a franchise agreement under the statutory definition.

The act applies to these parties. Under the act, plaintiff was a dealer, defendants constituted a supplier and the parties had entered a franchise agreement. However, merely stating that the parties had entered into a franchise agreement is not dispositive since the supplier is *not* required to repurchase inventory in *every* case where the supplier and dealer have made such an agreement. We emphasize the following language in § 3 of the act:

> If a dealer enters into a franchise agreement with a supplier that *is evidenced by a written or* implied contract, sales agreement, or security agreement *in which the dealer agrees to maintain an inventory,* and the contract, sales agreement, or security agreement is subsequently terminated, the supplier shall repurchase the inventory of the dealer as provided in this act. The dealer may choose to keep the inventory if the dealer has a contractual right to do so.

Neither the finance plan nor the security agreement in this case requires plaintiff to maintain an inventory. Therefore, we are constrained by the language of the act to find that defendants are not

required to repurchase the inventory in this case. Section 3 of the act specifically requires that a supplier is required to repurchase the inventory only if the contract, sales agreement or security agreement provides that the dealer agrees to maintain an inventory. Again, by contrast, we make note of the language in the previously terminated "Dealer Agreement" which required the dealer to maintain an inventory. That agreement provided that the dealer agreed to "carry an adequate supply of parts and maintain adequate service in a manner satisfactory to" the supplier. We find no such clause in the finance plan or security agreement in the instant case. Therefore, defendants are not required to repurchase the inventory. Defendants also raised constitutional issues, claiming that the act, if read to apply retroactively, imposed a new contractual obligation on the parties in violation of US Const, art I, § 10 and Const 1963, art 1, § 10. Given our holding that no obligation to repurchase exists, we do not address the constitutional issue.

Affirmed.