SMITH v MICHIGAN BELL TELEPHONE COMPANY

Docket No. 125966. Submitted March 6, 1991, at Lansing. Decided
May 6, 1991, at 10:45 A.M. Leave to appeal sought.

Paul L. Smith was awarded workers' compensation benefits from
his employer, Michigan Bell Telephone Company, on the basis
that work-related events had aggravated his nonoccupational
knee injuries. A hearing referee allowed the defendant to credit
the wage continuation payments it made to the plaintiff against
its workers' disability compensation liability. The Workers'
Compensation Appeal Board affirmed the finding of disability,
but denied any wage continuation credit on the basis that there
was no evidence in the record regarding such payments. The
board also rejected the defendant's request for a setoff of any
unemployment benefits which had been paid on the basis of a
lack of evidence in the record that such payments had been
made. The defendant was granted leave to appeal.

The Court of Appeals *held:*

There was competent evidence in the record supporting the
board's determination that disability resulted from a work-
related aggravation of a nonoccupational knee injury. However,
the board erred in refusing to allow the defendant to set off
against its workers' compensation liability the unemployment
benefits and wage continuation payments which had been made
to the plaintiff.

1. While the evidence specifically cited by the board in its
opinion does not support its conclusion that there was a work-
related disability arising out of the aggravation of a preexisting
nonoccupational condition, the board's incorporation by refer-
ence of the testimony of a doctor which supported that determi-
nation was sufficient to support its finding of work-related
disability.

2. Although the defendant is correct in its assertion that the
board may not order the payment of interest on reimbursement

REFERENCES

Am Jur 2d, Workmen's Compensation § 433.

Application for, or receipt of, unemployment compensation benefits
as affecting claim for workmen's compensation. 96 ALR2d 941.

of medical expenses, the assertion is inapposite because the board did not order the payment of such interest.

3. An employer is entitled, pursuant to MCL 418.358; MSA 17.237(358), to take credit against workers' compensation liability of all amounts paid to an injured employee as unemployment benefits without first requesting an evidentiary hearing, because the amount of the setoff is an objective fact that readily can be determined. Accordingly, it was error for the board to deny the setoff merely because the defendant had not offered proof of the amount.

4. An employer is entitled to credit against its workers' compensation liability any wage continuation payments made to an injured employee. The board erred when it held that there was no evidence of those payments, because the plaintiff himself testified that he had received full pay for thirteen weeks and half pay for the remainder of the year following his becoming disabled.

Reversed and remanded.

1. WORKERS' COMPENSATION — UNEMPLOYMENT COMPENSATION —
SETOFF AGAINST BENEFITS.

An employer is entitled to take a credit against its workers' disability compensation liability of any unemployment compensation benefits paid to an injured employee without first seeking an evidentiary hearing to establish the amount of benefits paid (MCL 418.358; MSA 17.237[358]).

2. WORKERS' COMPENSATION — WAGE CONTINUATION BENEFITS —
SETOFF AGAINST BENEFITS.

An employer is entitled to take a credit against its workers' disability compensation liability of any wage continuation payments made by the employer to an injured employee (MCL 418.811; MSA 17.237[811]).

*Sachs, Nunn, Kates, Kadushin, O'Hare, Helveston & Waldman, P.C.* (by *Granner S. Ries*), for the plaintiff.

*Lacey & Jones* (by *Gerald M. Marcinkoski*), for the defendant.

Before: GILLIS, P.J., and WEAVER and DOCTOROFF, JJ.

DOCTOROFF, J. Defendant appeals by leave

granted from a January 15, 1990, order of the Workers' Compensation Appeal Board which affirmed with modification the decision of a hearing referee granting compensation benefits to plaintiff. Defendant raises three issues involving the adequacy of the Appeal Board's opinion. Defendant argues that the Appeal Board's opinion fails to distinguish between situations where a preexisting condition merely manifests itself at work and situations where work aggravates a preexisting condition, that the Appeal Board failed to address defendant's date-of-injury argument, and that the Appeal Board's opinion needs clarification relative to the awarding of interest to plaintiff on medical benefits. We disagree. In addition, defendant argues that the Appeal Board erred in denying defendant's request for a setoff for unemployment benefits plaintiff received and that the Appeal Board erred in denying defendant credit for wage continuation payments made to plaintiff. We agree and reverse.

Plaintiff began working for defendant in 1969 as a cable splicer. After a four-year apprentice program, he reached the maximum pay for this job classification. He testified that, depending upon the type of job duties, he would use spikes, ladders, or mechanical buckets or would construct platforms to do his cable work outside. He was also required to work underground in manholes. During most of the time plaintiff worked for defendant, he worked out of the Seacock Garage in Lincoln Park.

Plaintiff testified to numerous nonoccupational sports-related knee injuries. By age twenty-two, plaintiff had had both knees operated on because of sports injuries. Nevertheless, he continued to actively engage in sports and, as a result, suffered many injuries over the years.

In spite of this, plaintiff testified that his knees only began to give him problems at work during the last two years of his employment. Plaintiff said that on August 9, 1979, he was carrying a ladder when he stepped in a hole, lost his balance, and wrenched his left knee. Plaintiff went to the company doctor and was put on light duty for a week. According to plaintiff, he has experienced problems with his left knee ever since the August 9, 1979, incident. Sometime shortly thereafter, he was transferred to the Abbott Street garage in downtown Detroit, and the majority of the work he did there was underground. He said his left knee began to bother him during this time, and he eventually saw the company doctor who placed him on temporary restrictions, and subsequently on permanent restrictions.

Plaintiff testified that on the last day of work his leg locked up from sitting on a small box in a manhole. However, he further testified that he climbed out of the manhole by himself and walked into the office, apparently after having driven there. There was no suggestion in the record that the locking lasted beyond that time.

Plaintiff filed a petition dated March 1, 1983, with the Bureau of Workers' Disability Compensation alleging disability caused by deterioration of arthritic knees. The hearing referee ultimately found that, notwithstanding disabling knee problems that were nonvocational, the weight of the evidence established that work-related events had aggravated plaintiff's nonoccupational injuries, resulting in disability. The referee also gave defendant credit for wage continuation payments made to plaintiff.

On appeal, the Workers' Compensation Appeal Board affirmed the finding of disability, but disagreed with the credit for wage continuation pay-

ments, stating that such credit should be denied because "[n]o evidence regarding a wage continuation plan appear(s) in the file or has been testified to at trial. . . ." The Appeal Board also rejected defendant's request for a setoff for unemployment compensation benefits paid pursuant to MCL 418.358; MSA 17.237(358). The Appeal Board found that § 358 was "not applicable in this matter. There was no evidence presented at trial to prove that plaintiff had received unemployment benefits."

The Appeal Board's analysis and rulings in this case on the issues of disability and causation are very brief and consist of the following two paragraphs:

> Based upon the testimony of plaintiff concerning his knee problems while employed by defendant and specifically the problems encountered on his last day of work with defendant, combined with the expert testimony of Dr. Newman and Dr. Baker, we find as fact that plaintiff has proven by a preponderance of the evidence that his nonoccupational knee injuries were aggravated to a point of disability by plaintiff's employment duties, culminating in a last day of work disability. *Aquilina v General Motors Corp,* 403 Mich 206 [267 NW2d 923] (1978).

> Plaintiff testified at hearing that his knee locked up on him on his last day of work from having to sit on a small box in a manhole while engaged in his employment duties. Further, Dr. Newman diagnosed severe degenerative osteoarthritic changes of the knees bilaterally, right greater than left, and suggested that plaintiff be evaluated for the possibility of a surgical implantation of prosthetic devices in his knees bilaterally. Dr. Baker testified that plaintiff was partially disabled and should avoid climbing poles, stairs and manhole ladders. Dr. Baker also testified that plaintiff would probably require surgical intervention with replacement

of the articular cartilages. Plaintiff further testified and we find as fact that he told his foreman that his knee had locked up and that he was going home. Therefore, defendant had notice of plaintiff's work-related injury.

Initially, we address the issues raised by defendant that involve the adequacy of the Appeal Board's opinion. It is readily apparent that that opinion is a marginal one in terms of complying with the requirements for written opinions by the Workers' Compensation Appeal Board as stated in *DeGeer v DeGeer Farm Equipment Co,* 391 Mich 96, 100-101; 214 NW2d 94 (1974), and *Nunn v George A Cantrick Co, Inc,* 113 Mich App 486, 493-494; 317 NW2d 331 (1982). The Appeal Board's opinions should show the path the board has taken through the conflicting evidence and indicate the testimony adopted, the standard followed, and the reasoning used in reaching the conclusions. The Appeal Board's opinions should indicate with some specificity, such as page citations, the testimony upon which they are relying in support of crucial findings of fact; it should not be left to the appellate courts to search the record to support the Appeal Board's findings of fact.

The medical testimony quoted by the Appeal Board before its rulings does support a finding of disability, but the testimony of Dr. Newman that supports a finding of work aggravation was not quoted by the Appeal Board or otherwise referred to specifically. However, since the appellate courts of this state review the Appeal Board's findings of fact under the "any competent evidence" standard, *Aquilina v General Motors Corp,* 403 Mich 206, 213; 267 NW2d 923 (1978), and the Appeal Board's opinion states that on the basis of the testimony of plaintiff, *combined* with the expert testimony of

Dr. Newman and Dr. Baker, it found that plaintiff had proven by a preponderance of the evidence that his injuries were aggravated to a point of disability by his employment duties, remand for a written opinion consistent with the requirements of *DeGeer* and *Nunn* is not required, especially since Dr. Newman's testimony does strongly support the Appeal Board's finding of work aggravation.

Regarding defendant's argument that the Appeal Board failed to make the subtle but important distinction between work that merely aggravates or elicits the symptoms of a degenerative condition and work that pathologically aggravates a preexisting degenerative condition, it is true that the Appeal Board's opinion does not clearly show an understanding of the distinction between aggravation of symptoms and aggravation of the underlying pathology. Nevertheless, the board did state that on the basis of the testimony of plaintiff concerning his knee problems while employed by defendant, and specifically the problems encountered on his last day of work with defendant, combined with the expert testimony of Dr. Newman and Dr. Baker, it found as fact that plaintiff had proven by a preponderance of the evidence that his nonoccupational knee injuries were aggravated to a point of disability by plaintiff's employment duties. This Court will not assume that the Appeal Board did not know and apply the law correctly just because it did not engage in a specific discussion of it. We note again that the Appeal Board did say it was relying on Dr. Newman's testimony, as well as plaintiff's and Dr. Baker's, and Dr. Newman's testimony strongly supported the conclusion that there had been an aggravation of the underlying pathology.

Regarding defendant's argument that this case

should be remanded because the Appeal Board did not address the date-of-injury argument presented, again it is true that the Appeal Board's opinion does not separately and specifically address this issue. However, the Appeal Board's order does affirm the hearing referee's decision with modification. The modification does not include any change in the date of injury, found in the hearing referee's decision to be September 30, 1981.

The Appeal Board did say that it found as fact that plaintiff had proven by a preponderance of the evidence that his nonoccupational knee injuries were aggravated to a point of disability by his employment duties, "culminating in a last day of work disability." That is the same date as the injury date established by the hearing referee. Hence, there is no basis for reducing the amount of weekly benefits that defendant is obliged to pay plaintiff on the basis of some earlier date of injury.

Defendant has also argued that the Appeal Board's opinion needs clarification relative to the awarding of interest to plaintiff on medical benefits. Specifically, defendant contends that no interest attaches to accrued medical benefits under the Workers' Disability Compensation Act, citing *Costa v Chrysler Corp,* 152 Mich App 530; 394 NW2d 6 (1986).

In the *Costa* case this Court found the decision in *Brown v Eller Outdoor Advertising Co,* 139 Mich App 7; 360 NW2d 322 (1984), to be controlling and held that should the Appeal Board determine that the plaintiff was entitled to workers' compensation, the plaintiff was not entitled to interest on reimbursement of medical expenses.

Although defendant's argument on the law is sound, that is that plaintiff is not entitled to interest on accrued medical benefits, it does not follow that the Appeal Board's order needs to be

remanded for clarification with respect to that point. While the order does not state that interest is not to be paid on medical benefits, there is no fair implication from the Appeal Board's decision that plaintiff should receive interest on the accrued medical benefits. In fact, the Appeal Board devotes one one-sentence paragraph to the medical benefits, stating: "Defendant shall be responsible for necessary and reasonable medical care pursuant to § 315."

The next and final paragraph states that interest on unpaid compensation benefits shall be paid at ten percent per annum. There is no suggestion that the medical benefits are part of the unpaid compensation benefits entitled to ten percent interest. Rather, the Appeal Board has separated the two items into consecutive paragraphs. Under these circumstances, this Court will not assume that the Appeal Board failed to know and follow the law as declared in *Brown v Eller Outdoor Advertising Co* and *Costa v Chrysler Corp.*

There remain two issues of law raised by defendant that are of substantial importance in the field of workers' compensation law. The first is whether the Appeal Board erred in rejecting defendant's request for a setoff for unemployment benefits pursuant to § 358 on the basis that no evidence was presented at trial proving plaintiff had received such benefits.

Section 358 reads:

Net weekly benefits payable under section 351, 361, or lump sum benefits under section 835, shall be reduced by 100% of the amount of benefits paid or payable to the injured employee under the Michigan employment security act, Act No. 1 of the Public Acts of the Extra Session of 1936, as amended, being sections 421.1 to 421.67a of the

Michigan Compiled Laws, for identical periods of time and chargeable to the same employer.

We observe that the statute does not purport to require an evidentiary hearing, and it appears that the amount of unemployment benefits received would be a matter of record requiring a simple arithmetical deduction. Defendant has pointed out that the Michigan Supreme Court in *Franks v White Pine Copper Division*, 422 Mich 636; 375 NW2d 715 (1985), did not require an evidentiary hearing in order for the employer to coordinate benefits under § 354, being MCL 418.354; MSA 17.237(354). The opinion said that the Legislature had directly addressed the issue and provided in § 354(10) a simple statutory recording procedure when the employer took a credit or made a reduction. That procedure was for the employer or carrier to report immediately to the bureau the amount of any credit or reduction and, if requested by the bureau, to furnish to the bureau satisfactory proof of the basis for a credit or reduction. The Supreme Court wrote that whether a claimant has received social security or pension benefits giving rise to a setoff under § 354 "is an objective fact that can be readily determined. For that reason, and because the amount of the setoff is a matter of arithmetic, the Legislature has provided that the employer may coordinate benefits without prior administrative approval." *Id.*, p 661.

Admittedly, there is no provision in § 358 comparable to subsection 10 of § 354. Nevertheless, the rationale that the amount of the reduction is an objective fact that can be readily determined seems equally applicable to the facts of this case. Defendant is entitled to credit for unemployment compensation paid to plaintiff. An evidentiary hearing is not necessary.

The remaining issue is whether the Appeal Board erred in concluding that defendant employer should not receive credit for wage continuation payments made to plaintiff. The Appeal Board denied credit because no evidence regarding such wage continuation plan appeared in the file or in the testimony at trial. However, as pointed out accurately by defendant, the testimony of plaintiff himself was that he "received full pay for thirteen weeks. And then for the remainder of the year, I received half pay."

The Appeal Board erred in denying defendant credit for wage continuation payments on the basis that there was no evidence of such payments in the record, given that plaintiff himself did give such testimony. The Appeal Board did not say the plaintiff's testimony was inadequate, but rather appeared to have been unaware of the testimony of plaintiff.

Defendant relies upon *Russell v General Motors Corp,* 172 Mich App 627, 633-635; 432 NW2d 738 (1988), as legal authority for such a credit. Earlier, this Court had held in *Black v Michigan Bell Telephone Co,* 128 Mich App 606; 341 NW2d 157 (1983), that MCL 418.811; MSA 17.237(811) prohibited the defendant employer, the same corporate defendant as in this case, from deducting voluntary wage continuation payments. In doing so, it affirmed the decision of the Workers' Compensation Appeal Board. The basis for the decision was that § 811 provides that any savings or insurance of the injured employee, or any contribution made by the injured employee to any benefit fund or protective association independent of the act, shall not be taken into consideration in determining the compensation to be paid under the act, "nor shall benefits derived from any other source than those paid or caused to be paid by the employer *as*

*provided in this act,* be considered in fixing the compensation under this act, except as provided in sections 161, 354, 358, 821, and 846." [Emphasis added.]

This Court held that the defendant had not proven that the wage continuation program which benefited the plaintiff was either wages within the meaning of MCL 418.371; MSA 17.237(371) or compensation paid "pursuant to the Workers' Disability Compensation Act." *Black, supra,* p 608.

However, subsequently in *Russell,* this Court had before it the issue whether an employer of a plaintiff who had received both sickness and accident benefits and also extended disability benefits, but who had only signed a reimbursement agreement for the sickness and accident benefits, is entitled to credit those extended disability benefits against its workers' compensation benefit liability. This Court held that since extended disability benefits were provided by an insurance company pursuant to its policy with the defendant employer, they were benefits "caused to be paid" by defendant within the meaning of MCL 418.811; MSA 17.237(811). *Russell, supra,* p 633. The Court said that under § 811 a reimbursement agreement was not necessary. *Id.*

More recently, in *Lulgjuraj v Chrysler Corp,* 185 Mich App 539; 463 NW2d 152 (1990), this Court held that, even in the absence of any reimbursement agreement between the insurance company and the employee, the Appeal Board erred in denying the insurance company reimbursement where the employee had received sickness and accident benefits provided on behalf of the employer. The Court based its decision on equitable principles.

In conclusion, we hold that this Court's decision in *Black v Michigan Bell Telephone Co* was erro-

neous and is not to be followed. Administrative Order No. 1990-6, 436 Mich lxxxiv. Instead, we adopt the rationale of *Russell* and *Lulgjuraj* and hold that the wage continuation payments in this case were benefits caused to be paid by the employer, and that it would be inequitable to deny the employer credit for such payments against its workers' compensation liability to plaintiff.

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.