MANER v FORD MOTOR COMPANY

KANALOS v GENERAL MOTORS CORPORATION

Docket Nos. 146999, 147000, 147001. Submitted May 28, 1992, at Lansing. Decided October 20, 1992, at 9:30 A.M. Leave to appeal sought.

Lawrence A. Maner was awarded workers' compensation wage loss benefits from his employer, Ford Motor Company. Maner subsequently petitioned for enforcement of the order awarding benefits and for penalties for late payment, alleging that Ford had failed to pay in full the benefits due under the previous order. Ford claimed that it was entitled to offset amounts paid Maner by its insurer as sickness and accident benefits. The hearing referee held that Ford was not entitled to the setoff. The Workers' Compensation Appeal Board affirmed, holding that Ford's failure to prove that Maner had executed an assignment or reimbursement agreement with respect to the sickness and accident benefits was fatal to its claim for a setoff and that Ford's insurer lacked standing to assert a claim for those benefits because it failed to intervene in the original proceedings. Ford appealed by leave granted.

Sharon Kanalos was awarded workers' compensation wage loss benefits from her employer, General Motors Corporation. The Workers' Compensation Appeal Board affirmed the hearing referee's determination, but modified the benefit period and ordered that wages paid during disability, but not other benefits that had been paid to Kanalos, could be offset against the award. Kanalos subsequently petitioned for enforcement of the order and for penalties for late payment. General Motors claimed that it was entitled to offset against the award amounts paid to Kanalos as wages, General Motors Disability Advance payments, sickness and accident benefits, and extended disability benefits. The hearing referee permitted the setoff. The appeal board permitted credit for the extended disability benefits, but denied credit for the other benefits because there was no evidence 'that General Motors paid or

REFERENCES

Am Jur 2d, Workmen's Compensation §§ 364-365.

See the ALR Index under Health and Accident Insurance; Worker's Compensation.

caused to be paid to Kanalos any alternative benefits or, if they were paid, that there was a reimbursement agreement. Kanalos and General Motors each appealed.

The appeals were consolidated. The Court of Appeals, CAV-ANAGH, P.J., and NEFF and W. R. BEASLEY, JJ., citing Administrative Order No. 1990-6, 436 Mich lxxxiv (1990), and *Smith v Michigan Bell Telephone Co,* 189 Mich App 125 (1991), held that Ford and General Motors were entitled to offset from the workers' compensation awards the amounts paid as sickness and accident benefits, disability advance benefits, or extended disability benefits. Unpublished opinion per curiam, decided October 29, 1991 (Docket Nos. 120622, 123645, 123722). The Court of Appeals subsequently granted plaintiffs' petitions to convene a special panel to resolve the question whether employers can deduct group benefits paid to employees from workers' compensation wage loss payments under MCL 418.811; MSA 27.237(811) if the group benefits were not caused to be paid by the employer as provided in the Workers' Disability Compensation Act. 193 Mich App 80 (1992).

In an opinion by Judge NEFF, joined by Judges MICHAEL J. KELLY, WAHLS, HOOD, GRIBBS, SULLIVAN, McDONALD, MURPHY, CAVANAGH, FITZGERALD, and CONNOR, the Court of Appeals *held:*

Section 811 of the Workers' Disability Compensation Act provides that there should be no deduction from workers' compensation wage loss benefits unless the benefits for which the setoff is sought were paid or caused to be paid by the employer as provided in the act or fall within the provisions of the sections enumerated in § 811. Disability advance payments, sickness and accident benefits, and extended disability payments are not benefits that are caused to be paid by the employer as provided in the act. Those benefits arise out of a contractual relationship rather than by statutory mandate. The claims of the employers that they are entitled to setoffs on the basis of the assignment of benefits provisions of § 821, MCL 418.821; MSA 17.237(821), are without merit because neither employer offered sufficient proof at the respective hearings to establish that an assignment or reimbursement agreement had been executed.

Reversed in part, affirmed in part, and remanded.

Judge WEAVER, joined by Chief Judge DOCTOROFF, concurring, stated that the injuries in these cases occurred before March 31, 1982, and thus were not subject to the coordination of benefits provisions of § 354 of the Workers' Disability Compensation Act, MCL 418.354; MSA 17.237(354).

WORKERS' COMPENSATION — SETOFF AGAINST BENEFITS — DISABILITY
    PAYMENTS — SICKNESS AND ACCIDENT BENEFITS.

    Benefits other than those paid or caused to be paid by an
    employer as provided in the Workers' Disability Compensation
    Act cannot be used to reduce amounts payable under the act to
    an injured employee unless such a reduction is specifically
    provided for in the act; disability advance payments, sickness
    and accident benefits, and extended disability payments are not
    benefits that are caused to be paid by the employer as provided
    in the act (MCL 418.811; MSA 27.237[811]).

*Levine, Benjamin, Tushman, Bratt, Jerris &
Stein, P.C.* (by *Charles P. Burbach*), for Lawrence
A. Maner.

*Sachs, Waldman, O'Hare, Helveston, Hodges &
Barnes, P.C.* (by *Granner S. Ries*), for Sharon
Kanalos.

*Gary L. Hayden,* (*Conklin, Benham, Ducey, List-
man & Chuhran, P.C.,* by *Martin L. Critchell,* of
Counsel), for Ford Motor Company.

*Conklin, Benham, Ducey, Listman & Chuhran,
P.C.* (by *Martin L. Critchell*), for General Motors
Corporation.

Amicus Curiae:

*Lacy & Jones* (by *Gerald M. Marcinkoski*), for
Michigan Bell Telephone Company.

Before: DOCTOROFF, C.J., and MICHAEL J. KELLY,
WAHLS, HOOD, GRIBBS, SULLIVAN, WEAVER, MC-
DONALD, MURPHY, CAVANAGH, NEFF, FITZGERALD,
and CONNOR, JJ.

NEFF, J. This appeal of these consolidated cases
is considered pursuant to the special panel conflict
resolution provisions of Administrative Order No.
1990-6, 436 Mich lxxxiv (1990), which were contin-

ued in effect by Administrative Order No. 1991-11, 439 Mich xiv (1991). On February 7, 1992, we granted the petitions of plaintiffs to convene a special panel of this Court:

> The Court orders that the petitions to convene a special panel pursuant to Administrative Order No. 1990-6 are granted and the prior opinion in these cases is vacated.
> The question in conflict to be resolved is whether employers can deduct group benefits paid to employees from workers' compensation wage loss payments under MCL 418.811; MSA 17.237(811) if the group benefits were not caused to be paid by the employer as provided in the Workers' Disability Compensation Act. The two decisions in conflict are *Smith v Michigan Bell Telephone Co,* 189 Mich App 125; 472 NW2d 32 (1991), and the unpublished opinion in these consolidated cases vacated above. [*Maner v Ford Motor Co,* 193 Mich App 80; 485 NW2d 119 (1992).]

We resolve the conflict in favor of the position expressed in the previous opinion in these cases. That is, we overrule *Smith* and hold that an employer may not reduce workers' compensation payments due an injured employee by the amount of other benefits received by the employee where those other benefits were not caused to be paid by the employer as provided in the Workers' Disability Compensation Act, MCL 418.101 *et seq.*; MSA 17.237(101) *et seq.*

### MANER

In a decision mailed February 27, 1980, a hearing referee found Lawrence A. Maner to be disabled and entitled to workers' compensation benefits as a result of injury dates in 1979. The Workers' Compensation Appeal Board affirmed the find-

ing of disability, but modified the award and provided for interest on the weekly payments in an opinion mailed December 28, 1982. This Court denied leave to appeal. Unpublished order of the Court of Appeals, entered June 6, 1983 (Docket No. 69289).

Maner subsequently filed a petition alleging Ford's failure to pay the benefits due under the previous decision and requesting penalties for late payment. The matter involved, among other things, the right of Ford to offset against amounts due Maner amounts previously paid to him as sickness and accident benefits. The language of the hearing referee in ruling that Ford was not entitled to offset the amounts paid as sickness and accident benefits is important and is quoted here:

> There is a dispute not only as to the amount, and the way interest is figured, but as to the right of Defendant to offset.
>
> No assignment was ever presented to the Court, and to this time, repayment to John Hancock [Insurance Company] has not been ordered. The entire amount due, plus interest, should have been paid to Plaintiff and his counsel.
>
> Moreover, if John Hancock had presented its claim, Plaintiff's counsel would have been entitled to an attorney fee on the recovery, pursuant to statute.
>
> Defendant now claims that John Hancock is in reality only a servicing agent, and the sickness and accident money paid by it is recoverable by defendant, without interest. If the money is indeed that of Defendant, the decision of the main case is res judicata, since defendant never claimed this at the trial.
>
> Defendant cannot arbitrarily make claims under an assignment without presenting the assignment and establishing its validity. It appears to take conflicting positions as to John Hancock.

Therefore, Plaintiff is entitled to recovery of the full amount of benefits at $142.00 per week from Sept. 8, 1978, to 8-9-83 when defendant began to pay under the Court's Order, with interest at 12%, less the amount of $6,406.20 previously paid and above recited.

John Hancock is free to take any steps it deems proper, in this or any other Court.

Defendant raises a claim of fairness. This Bureau has been told repeatedly, it has no equity jurisdiction. We can only conform to and apply the law as it exists.

Since a genuine dispute exists, no penalty is assessed.

Both parties appealed, Maner claiming entitlement to penalties and Ford claiming entitlement to offset. The decision of the hearing referee was affirmed by the appeal board in an opinion and order mailed August 8, 1989. The appeal board held that, on the facts of this case, proof of an assignment was required to support an offset and that Ford's failure to prove that plaintiff had executed an assignment was fatal to its claim. The appeal board also agreed with the hearing referee that John Hancock Insurance Company, to which the assignment allegedly ran, had no standing to claim reimbursement because it had failed to intervene at trial or on appeal of the original proceeding.

Application for leave to appeal to this Court was granted on February 27, 1990.

### KANALOS

In a decision mailed July 25, 1978, a hearing referee found Sharon Kanalos to be partially disabled and entitled to workers' compensation benefits as a result of an injury in 1973. The board

affirmed the hearing referee's determination with modification of the period for which benefits were owed and ordered that General Motors was entitled to an offset for wages paid during the period of disability, but not for any other benefits paid. The opinion and order were mailed January 27, 1982. This Court denied leave to appeal. Unpublished order of the Court of Appeals, entered June 9, 1982 (Docket No. 62933). The Supreme Court reached the same result on April 19, 1983. 417 Mich 945 (1983).

Kanalos subsequently filed a petition alleging General Motors' failure to pay benefits due under the previous decision and requesting penalties for late payment. The matter involved, among other things, the right of General Motors to offset against amounts due Kanalos amounts paid to her as wages earned, General Motors Disability Advance (GMDA) payments, sickness and accident (S & A) benefits and extended disability benefits (EDB). Also at issue was whether interest was payable on the alternative benefits paid to plaintiff during the same period for which plaintiff was subsequently found to be entitled to workers' compensation benefits.

The opinion and order of the hearing referee, mailed August 7, 1984, points out that by contract the parties provided for the payment of GMDA, S & A, and EDB payments, while the statute provides for payment of seventy percent of weekly benefits to the employee when an opinion favorable to the employee is appealed by the employer. This system of benefits, contractual and statutory, sometimes results in conflicts and, according to the hearing referee, "where there is a conflict between contractual and statutory obligations the statutory obligations will be controlling." The hearing referee went on to hold that General Motors "may reduce

the award by the amount of wages, GMDA, S & A, EDB and 70% payments received by the employee." No penalty was assessed.

On appeal to the appeal board, the hearing referee's determination was affirmed in part and reversed in part. Credit for EDB payments was affirmed pursuant to *Russell v General Motors Corp*, 172 Mich App 627; 432 NW2d 738 (1988). However, credit for other benefits was reversed because there was "no evidence . . . that the defendant paid or caused to be paid any alternative benefits to the plaintiff." General Motors' claim of an offset for GMDA and S & A benefits was thereby disallowed. On March 21, 1990, this Court granted leave to appeal and ordered this case to be submitted with *Maner v Ford Motor Co.*

I

Following submission of the consolidated appeals, a panel of this Court ruled:

> The benefits payable to the two plaintiffs in these consolidated cases were not susceptible to deduction from workers' compensation wage loss payments under § 811 because they were not caused to be paid by the employer *as provided in the act.* However, we believe we are bound by Administrative Order 1990-6, 436 Mich lxxxiv (1990), to follow the dictates of *Smith* [v *Michigan Bell Telephone Co,* 189 Mich App 125; 472 NW2d 32 (1991)], and hold that defendants in these consolidated cases are entitled to offset from workers' compensation benefits due amounts paid to plaintiffs as S & A benefits, GMDA benefits, and EDB benefits. We reach this conclusion only because we are compelled to under Administrative Order 1990-6. [Unpublished opinion per curiam of the Court of Appeals, decided October 29, 1991 (Docket Nos. 120622, 123465, 123744).]

Accordingly, the panel reversed the board's opinion in *Maner*, affirmed the portion of the board's opinion in *Kanalos* that allowed the setoff for EDB payments, and reversed the portion of that opinion that disallowed the setoff for GMDA and S & A benefits.

It was that ruling that prompted this Court to grant the request to convene the special panel and rehear the case. As noted earlier, we now overrule *Smith* and adopt the reasoning expressed in the previous opinion in these cases. That reasoning is as follows.

II

The Workers' Disability Compensation Act has at least four provisions that deal with various benefits and their deduction from workers' compensation weekly wage loss payments, and the appellate courts have interpreted these provisions in various factual contexts. Confusion arises in part because of the plethora of benefits to which individual injured employees are entitled by statute or contract and in part because of the statute's piecemeal approach to the related, but not identical, issues of reimbursement, coordination, and offset.

The problem is further exacerbated by the sometimes sloppy practice at the trial level in which the hearing referee does not have the benefit of full proofs concerning alternative benefits received by the employee, the amount of such benefits, and whether they are payable pursuant to law or contract or on a purely voluntary basis. As a result of the failure to provide the hearing referee with complete and accurate information, there is often dispute after the case is litigated about the proper rate of compensation payable to the employee, the amount on which interest is payable,

and the amount on which attorney fees are calculated. This problem only gets worse on appeal where there is an inadequate record from which to determine exactly what the employee received and exactly what the employer is required to pay.

Underlying these disputes is the need to ensure prompt payment to injured workers of amounts due them and to avoid the hardships that arise when they are unable to earn wages, but while their workers' compensation payments may be in controversy. On the other side of the ledger is the policy against double recovery by the employee, which has been said to be "repugnant to the very principles of workers' compensation." *Hiltz v Phil's Quality Market,* 417 Mich 335, 350; 337 NW2d 237 (1983).

A

In general, the Workers' Disability Compensation Act protects workers' compensation benefits from erosion. MCL 418.651; MSA 17.237(651) provides, in part:

Liability for compensation under this act shall not be reduced or affected by any insurance, contribution or *other benefit whatsoever,* due to or received by the person entitled to such compensation." (Emphasis added.)

MCL 418.811; MSA 17.237(811) provides:

Any savings or insurance of the injured employee, or any contribution made by the injured employee to any benefit fund or protective association independent of this act, shall not be taken into consideration in determining the compensation to be paid under this act, nor shall *benefits derived from any other source* than those paid or caused to be paid by the employer as provided in this act, be considered in fixing the compensation

under this act, except as provided in sections 161, 354, 358, 821, and 846." (Emphasis added.)[1]

B

Logically it would seem a simple matter to determine whether, under the act, benefits received by an injured worker, *other than those payable under the act*,[2] may be deducted from (setoff from, coordinated with) workers' compensation payments. First, one would identify the type of benefit received by the employee (social security benefits, wage continuation payments, unemployment compensation, group disability benefits, and so forth) and its source (a benefit fully funded by the employer, a governmental benefit, and so forth). Second, one would look to the act to determine whether the particular benefit received by the injured employee is an exception to the general rule of no deductions from workers' compensation payments due. Finally, one would determine from the statutory scheme the proper procedure by which workers' compensation benefits would be made to reflect the adjustment (credit, coordination, reimbursement) for the other benefits received.

Unfortunately, applying this seemingly logical approach to specific factual circumstances and within the context of case law construing the act

---

[1] The coordination of benefits provision of § 354, MCL 418.354; MSA 17.237(354), does not apply in this case because of the specific language of the 1987 amendments to this section of the act. Only benefits payable on account of injuries after March 31, 1982, are subject to coordination under § 354.

[2] Benefits payable under the act that may be subject to offset include those payable for total disability (§ 351, MCL 418.351; MSA 17.237[351]), partial disability or specific loss (§ 361, MCL 418.361; MSA 17.237[361]), or lump sum redemptions (§ 835, MCL 418.835; MSA 17.237[835]).

does not necessarily lead to clear answers with regard to whether a given benefit may or may not be deducted from, credited against, coordinated with, or otherwise subtracted from workers' compensation benefits.

### MANER

During the litigation of Maner's workers' compensation case, he apparently received s & A benefits from John Hancock Insurance Company. When Ford's liability to pay Maner workers' compensation benefits for total disability became final in 1983, after this Court had denied leave to appeal, Ford undertook to pay Maner the amounts owed. However, payment of part of the amount due Maner was made in a check payable to him and John Hancock, although John Hancock has never been a party to the litigation. Presumably, Ford took the position that John Hancock was entitled to reimbursement under § 821 of the act, MCL 418.821; MSA 17.237(821).

However, when Maner filed his petition seeking full benefits, without any deduction for s & A benefits he had received, it became apparent that no reimbursement agreement or assignment had ever been introduced into evidence, which would seem to be a prerequisite for reimbursement under § 821. Ford then advanced the argument that it was entitled to a direct offset under § 811, MCL 418.811; MSA 17.237(811), and that John Hancock is merely an administrator of s & A benefits payable as a contract obligation and totally funded by Ford.[3] In this argument Ford claimed that the s & A benefits were "caused to be paid by the

---

[3] No proof was ever introduced concerning whether the s & A benefits were paid by John Hancock under an insurance policy or whether John Hancock was merely a pass-through agent that received funds for s & A payments from Ford and then passed those funds on to

employer," but ignored the requirement of § 811 that the benefits be paid "as provided in the act." Clearly the s & a benefits were not paid "as provided in the act"; they were paid as provided in a contract.

Section 811 contains an exception for benefits paid under § 821; that is, benefits payable under § 821 are deductible under § 811, even though they are not "caused to be paid by the employer as provided in this act." However, as noted, Ford is no longer claiming reimbursement on behalf of John Hancock under § 821, and no assignment or reimbursement agreement was ever admitted into evidence.

### *KANALOS*

During the litigation of Kanalos' workers' compensation case, she apparently received so-called group benefits from a number of sources. These included s & a benefits, EDB payments and GMDA benefits. It is not clear from the record before us whether some, all, or none of these benefits were paid by or through an insurance company or other intermediary or whether they were paid by General Motors. No insurance company has ever been a party to the litigation.

In any event, when General Motors' liability to pay workers' compensation benefits for partial disability became final in 1983 after the Michigan Supreme Court denied leave to appeal, it undertook to pay Kanalos the amounts owed. However, General Motors deducted the amounts for the group benefits from the amount it paid her. When Kanalos filed a petition claiming entitlement to all

claimants like Maner. All we have before us are the seemingly inconsistent positions taken by Ford regarding John Hancock's role in the process and the arguments made at various stages of the proceedings.

workers' compensation benefits due, regardless of group benefits paid, the hearing referee agreed with General Motors and allowed the deduction.

The appeal board held that General Motors was entitled to deduct EDB payments on the basis of *Russell.* However, the board denied the credit for the other group benefits, S & A and GMDA, because there was "no proof that such benefits were paid or, if they were paid, that the plaintiff signed a reimbursement agreement."

It seems clear that the group benefits in question were not paid pursuant to § 811, because they are not the type of benefits provided in the act. If they were paid pursuant to § 821 or pursuant to contractual obligation, there is no proof that Kanalos signed the requisite reimbursement agreement that would entitle either a third-party payor or defendant to a reimbursement or an offset.[4]

### III

A number of appellate cases have discussed issues concerning §§ 811 and 821 of the Workers' Disability Compensation Act. Five of these bear in one degree or another on the issues in this case, and they will be discussed chronologically.

### A

In *Aetna Life Ins Co v Roose,* 413 Mich 85; 318 NW2d 468 (1982), the Supreme Court held that the Bureau of Workers' Disability Compensation has jurisdiction to review the validity and enforceability of an insurance company's claim against an injured worker for failure to repay under a reim-

---

[4] It should be noted that there is no evidence in the record of the amount of benefits received by either plaintiff. Defendants just deducted amounts that they claim the plaintiffs received without proving either receipt or amount.

bursement agreement made pursuant to § 821. The Court further held that a reimbursement agreement is equivalent to an assignment under § 821 and, therefore, is actionable under that section of the act.

The Court in *Roose* noted that the legislative intent and spirit of § 821 are to encourage insurance companies to pay s & a benefits to injured employees, with the statutorily approved mandate that if those same benefits are later deemed covered by workers' compensation benefits, they will be repaid. *Id.* at 87.

In *Roose,* the employer requested that Aetna pay s & a benefits to the injured employee, Roose, who signed a reimbursement agreement. The benefits were paid by Aetna. Roose successfully litigated a workers' compensation claim against his employer, which paid the benefits found to be owing and which also requested that Roose reimburse Aetna out of the lump sum paid him. Roose refused, and Aetna attempted to convince Roose to repay the amount owed under the reimbursement agreement. Roose again refused.

The insurance company then filed a petition with the bureau, seeking enforcement of the reimbursement agreement. The referee held that Roose owed Aetna $3,481.76, less a $1,161 setoff for attorney fees paid by Roose to recover his workers' compensation benefits. The balance due Aetna was $2,320.76. The appeal board and this Court affirmed. The Supreme Court granted leave to appeal.

In determining that the bureau has jurisdiction to decide the validity and enforceability of the reimbursement agreement, the Supreme Court noted the general rule enunciated in § 821 that workers' compensation payments are not assignable or subject to attachment or garnishment or to

be held liable for debts. However, § 821 also contains an exception to the general rule that applied to the very fact situation in that case. The Court pointed out the dual purposes of § 821. The first purpose is to protect workers' compensation benefits from those who would acquire a lien or enforce a debt against them. The second purpose is to protect s & A insurers who pay claims that enable workers to make ends meet while awaiting a determination of their workers' compensation claims. *Id.* at 92-94.

It is important to note that *Roose* involved an insurer seeking to recover group benefits paid pursuant to a contract and for which a reimbursement agreement was signed by the employee. It did not involve an employer attempting to take a credit against its workers' compensation liability for group benefits that had been paid, as is the situation in both of the cases sub judice.

B

In *Black v Michigan Bell Telephone Co,* 128 Mich App 606; 341 NW2d 157 (1983), the employer voluntarily paid wages to the plaintiff after her last day of work pursuant to company policy. When the plaintiff filed a workers' compensation claim, the payments were stopped. The plaintiff won her workers' compensation claim, and when the employer paid the amount due under the award, it sought a setoff for the wages voluntarily paid after the disability.

The board rejected the setoff claim under § 811, because the payments amounted to voluntary wage continuation that was not paid as provided in the act, although it was clear that the payments were made by the employer. This Court affirmed, holding that the defendant failed to prove that the

payments made under the wage continuation program were either wages under § 371 of the act, MCL 418.371; MSA 17.237(371), or compensation paid pursuant to the act.[5] *Id.* at 608.

C

In *Russell, supra,* the plaintiff received S & A and EDB payments from an insurance carrier while her workers' compensation claim was being litigated. When her employer paid workers' compensation benefits, it deducted as reimbursement the amount of the S & A and EDB payments. There was a signed reimbursement agreement for the S & A benefits, but not for the EDB payments.

This Court held that the employer was entitled to the setoff for EDB payments made by the insurance company even though no reimbursement agreement was signed and the insurance company was not a party. The Court reasoned that because the benefits were paid by the insurer pursuant to its policy with the employer, they were benefits "caused to be paid" by the employer for purposes of § 811 and that a reimbursement agreement was not required. *Id.* at 633. The Court completely ignored the remainder of § 811 that renders it applicable only to benefits payable as provided in the act, which the EDB payments clearly were not.

The Court also let stand the employer's deduction for S & A benefits, presumably because a reimbursement agreement was signed by the plaintiff with respect to those benefits. *Id.* However, no mention was made of the fact that the insurer that paid the S & A benefits was not the party seeking to enforce the reimbursement agreement.

[5] Two of the members of the *Black* panel are now members of our Supreme Court, Chief Justice CAVANAGH and Justice RILEY.

D

In *Lulgjuraj v Chrysler Corp,* 185 Mich App 539; 463 NW2d 152 (1990), while the plaintiff litigated his workers' compensation claim, he received s & A benefits and EDB payments from Aetna, the employer's group insurer. When the board awarded the plaintiff workers' compensation benefits, the employer paid, but the plaintiff refused to reimburse Aetna pursuant to alleged assignment agreements.

There was further litigation of the claim initiated by the plaintiff, who claimed that Aetna was not entitled to reimbursement, and Aetna intervened, seeking reimbursement. The plaintiff admitted receipt of both s & A benefits and EDB payments and he also admitted signing the assignment regarding the EDB payments. However, he denied signing an assignment regarding the s & A benefits.

The appeal board held that the assignment relating to the EDB payments was enforceable. However, because the defendants (employer and insurer) did not prove that an assignment had been executed for the s & A benefits, the board did not grant the reimbursement claim with regard to those benefits. The board declined to apply equitable principles. This Court determined that the record supported the factual finding that the defendants failed to prove the existence of a valid assignment of the s & A benefits. However, the Court decided that the board erred in failing to apply equitable principles to require reimbursement of Aetna. *Id.* at 544.

The Court reasoned that Aetna's right to reimbursement arose out of the employer-employee relationship and that fact provided exclusive jurisdiction in the Bureau of Workers' Disability Com-

pensation to decide the question of entitlement to reimbursement, whether the decision involved application of legal or equitable principles. *Id.* at 545. The Court ruled that lack of a reimbursement agreement is not fatal to a claim *by the insurer* pursuant to § 821 for reimbursement of group benefits and that because the plaintiff had clearly received the S & A benefits, equity and good conscience required him to repay the insurer.

E

The most recent case is *Smith v Michigan Bell Telephone Co,* 189 Mich App 125; 472 NW2d 32 (1991), lv gtd 440 Mich 891 (1992). In that case, the plaintiff received wage continuation payments while his workers' compensation claim was pending. The hearing referee allowed the defendant to credit the wage continuation payments against the workers' compensation due, but the appeal board refused to allow the credit because there was no evidence in the record with regard to such payments. This Court held that there was testimony from the plaintiff in the record with regard to the wage continuation payments, although the opinion does not detail the testimony.

In holding that the employer was entitled to take a credit for the wage continuation payments, the Court expressly overruled *Black* and adopted the rationale of *Russell* and *Lulgjuraj.* The Court held that the wage continuation payments were caused to be paid by the employer, thereby entitling the employer to a credit under § 811. The Court completely ignored the fact that the payments were not paid by the employer as provided in the act as required by § 811.

F

*Roose, Black,* and *Lulgjuraj* are consistent with

each other and with the statute. *Russell* and *Smith* are not and both ignore the clear language of the statute.

Section 811 allows no deduction from workers' compensation wage loss payments unless those benefits sought to be deducted either were benefits that were paid or caused to be paid by the employer as provided in the act, or were benefits that fall into one of the sections of the act enumerated in § 811, which includes § 821.

In *Roose,* the benefits were clearly § 821 payments, and the insurer that made the payments sought reimbursement in its own name. In *Black,* the employer's attempt to deduct benefits paid under § 811 was rejected because they were not benefits within the meaning of that section of the act. In *Lulgjuraj,* reimbursement of § 821 benefits was sought by the insurer in its own name as an intervenor.

In *Russell* and *Smith,* the employer sought reimbursement under § 811, even though the benefits were not paid as provided in the act. In *Russell,* the benefits were paid by an insurer that was not a party to the litigation. In *Smith,* it is not clear whether the employer or an insurer paid the benefits.[6]

IV

The benefits payable to the plaintiffs in these consolidated cases were not susceptible to deduction from workers' compensation wage loss payments under § 811, because they were not caused to be paid by the employer *as provided in the act.*

---

[6] If it was the insurer that had paid the benefits, the Court might have reached the right result for the wrong reason. Under the reasoning of *Lulgjuraj,* the reimbursement is allowed on equitable principles under § 821. Section 811 does not enter into the picture.

Accordingly, the board's opinion in *Maner* is affirmed. In *Kanalos,* we reverse that portion of the board's decision that allowed the setoff for EDB payments, affirm that part that disallowed setoff for GMDA and S & A benefits, and remand this case to the appeal board, which in turn shall remand to the hearing referee for further proceedings consistent with this opinion. We do not retain jurisdiction.

MICHAEL J. KELLY, WAHLS, HOOD, GRIBBS, SULLIVAN, McDONALD, MURPHY, CAVANAGH, FITZGERALD, and CONNOR, JJ., concurred.

WEAVER, J. *(concurring).* While I concur in the majority opinion, I write separately to emphasize that the injuries in these cases occurred before 1982. Injuries occurring after March 31, 1982, are subject to coordination under § 354 of the Workers' Disability Compensation Act, MCL 418.354; MSA 17.237(354).

As the Supreme Court stated in *Stanley v Henchliffe,* 395 Mich 645, 657; 238 NW2d 13 (1976): "Double recovery is repugnant to the very principles of workmen's compensation."

DOCTOROFF, C.J., concurred.